IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT TERRY JR.; and LISA FOSTER INDIVIDUALLY, AND AS NEXT FRIENDS OF THEIR DECEASED SON ROBERT ANDREW TERRY, <br>     Plaintiffs, <br><br> v. <br><br> Harris County, Texas, <br>     Defendant. | § § § § § § § § § § § § | Civil Action No. 4:24-CV-3068 |

### Defendant Harris County's
### Motion for Summary Judgment on Evidence Grounds

FELDMAN & FELDMAN, P.C.

Cris Feldman
Attorney-in-Charge
Texas Bar No. 24012613
S.D. Texas Bar No. 712459
cris.feldman@feldman.law
Fernando De Leon
Of Counsel
Texas Bar No. 24025325
S.D. Texas Bar No. 32395
fernando.deleon@feldman.law
3355 West Alabama, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472

*Attorneys for Defendant*
*Harris County, Texas*

Defendant Harris County, Texas (the "County") files this Motion for Summary Judgment on Evidence Grounds and, in support thereof, would respectfully show the Court as follows:

## Introduction and Summary

The County asks the Court to grant summary judgment in its favor on all claims asserted against it in this suit by Plaintiffs Robert Terry Jr. and Lisa Foster ("Plaintiffs"). Plaintiffs filed suit against the County asserting *Monell* claims under 42 U.S.C. § 1983. They assert claims for conditions-of-confinement, failure to train, failure to supervise, and wrongful death arising from the death of their son Robert Terry ("Terry") that allegedly occurred because detention officers assaulted and beat him and then ignored and left him to suffer and die. The County is entitled to summary judgment on Plaintiffs' claims because the evidence disproves the essential element of causation—and their sensational allegations that detention officers assaulted and beat Mr. Terry and left him to suffer and die. Plaintiffs' pleading is a fiction.

Even assuming the existence of any alleged policy, custom, or practice (which the County denies), the evidence confirms that no alleged County policy, custom, or practice caused or was the moving force behind any alleged injury or harm to Mr. Terry. Second, even assuming any alleged failure to train or

1

supervise (which the County also denies), the evidence also confirms that no alleged County failure to properly train County detention officers caused or was the moving force behind any alleged injury or harm to him. More specifically, the evidence confirms that neither any alleged policy, custom, or practice nor any alleged failure to train or supervise was closely related to any ultimate injury or actually caused any constitutional violation alleged by Plaintiffs.

Indeed, the evidence in this case actually disproves Plaintiffs' central factual allegation that County detention officers assaulted and beat Mr. Terry and that over the next three days ignored his screams of agony and requests for medical attention. To be clear, the jail video recordings (which the County will offer at trial), prove and confirm that Mr. Terry showed no signs of injury or distress from the time he was booked into jail on May 13, 2023, until almost three days later on May 16, 2023, when he died. These recordings also prove and confirm that detention officers and medical staff promptly responded to assist and render aid to Mr. Terry and that he was then transported away from the jail in an ambulance to the hospital where he was pronounced deceased. Moreover, Plaintiffs' own expert in this case has concluded that Mr. Terry died of internal hemorrhage resulting from his use of brodifacoum (a powerful warfarin-like anticoagulant and potent poison commonly used as rodenticide) that had been

mixed with the K2 (a psychoactive synthetic cannabinoid usually sprayed or mixed with tobacco or marijuana and smoked).

The County is obligated to note that Plaintiffs' allegations that detention officers assaulted and beat Mr. Terry and then ignored him for days are astonishing in the face of these *clear* video recordings that flatly contradict and disprove their fictionalized allegations. Rule 56 of the Federal Rules of Civil Procedure requires the Court to grant summary judgment for the County because the evidence disproves the essential element of causation and Plaintiffs' allegations. Plaintiffs' contentions that officers assaulted and beat Mr. Terry and then ignored his pleas for help are utterly baseless and false. The County is entitled to summary judgment on all Plaintiffs' claims.

### Procedural Background, Allegations, and Evidence

On August 16, 2024, Plaintiffs filed their original complaint in this suit. [Dkt. 1.] On November 21, 2024, they filed their first amended complaint. [Dkt. 13.] Plaintiffs assert *Monell* claims under 42 U.S.C. § 1983 against the County alleging that Mr. Terry died as result of an incident that allegedly occurred at the Harris County jail. [Dkts. 1, 13.][1] They assert claims for unconstitutional

---

[1]   *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

conditions-of-confinement arising from: (1) institutionalized excessive force by jail employees against detainees, (2) failure to provide medical care or sufficient medical care to detainees, (3) failure to observe and monitor detainees, (4) a culture of violence among detainees, and (5) systemic understaffing and overcrowding. [Dkt. 13, pp. 183-92.] They also assert claims for failure to train detention officers and failure to supervise detention officers. [Dkt. 13, pp. 192-96.] They also assert claims for wrongful death. [Dkt. 13, pp. 196-97.]

On May 13, 2023, Plaintiffs allege that Mr. Terry was booked into the Harris County jail. [Dkt. 13, p. 9.] They allege that, shortly after entering the jail, several detention officers unjustifiably dragged Mr. Terry to a holding cell known for beating detainees. [Dkt. 13, p. 9.] They allege that no cameras covered this cell. [Dkt. 13, p. 9.] They allege that the guards then handcuffed Mr. Terry to an item in the room, beat him significantly until there was blood on the walls, and then dragged his unconscious body back to his cell. [Dkt. 13, pp. 7, 9.] They allege that the beating caused Mr. Terry to suffer internal bleeding and blunt force trauma which should have been visible to the clinic staff. [Dkt. 13, p. 9.] They allege that his internal bleeding and other injuries caused Mr. Terry to complain of nausea and lightheadedness. [Dkt. 13, p. 9.]

Plaintiffs allege that, over the next couple of days, the jail ignored Mr. Terry's numerous requests for medical attention, his screams of agony, and his vomiting and pooping blood which were clear signs of internal bleeding. [Dkt. 13, pp. 7, 9-11.] They allege that the jail staff failed to observe and monitor him appropriately and failed to respond to him until it was too late. [Dkt. 13, p. 7.] They allege he became lightheaded and passed out numerous times due to the loss of blood causing him to hit his head on the metal toilet and on the metal bars of his cell. [Dkt. 13, p. 7.] They allege that when officers did arrive, they dragged him out by his legs and stood around him for several minutes laughing at him, making fun of him, and claiming he was faking it before finally calling for medical care. [Dkt. 13, pp. 7, 10, 11.] They allege that, by this time, it was too late and he passed away shortly thereafter. [Dkt. 13, pp. 7, 11.]

But the *clear* video recordings of Mr. Terry in the Harris County jail facilities flatly contradict and disprove Plaintiffs' allegations that detention officers assaulted and beat Mr. Terry and that over the next three days ignored his screams of agony and requests for medical attention.[2] These recordings

---

[2] *See* Exhibit 1 (Declaration of Candice Kelley); Exhibit 2 (Declaration of Artur Zigman). *See also* Fed. R. Evid. 1006 (admissibility of summaries of voluminous materials); Fed. R. Evid. 803(6) (hearsay exception for records of regularly conducted activity); Fed. R. Evid. 902(11) (self-authentication of certified domestic records of a regularly conducted activity). *See also* Fed. R.

5

(which the County will offer at trial) prove that Mr. Terry showed no signs of injury or distress from the time he was booked into jail on May 13, 2023, until almost three days later on May 16, 2023, when he died.³ These recordings also prove that when Mr. Terry began experiencing distress in the early morning hours of May 16, 2023, both detention officers and medical staff promptly responded to assist and render aid, before he transported away from the jail in an ambulance to the hospital where he was pronounced deceased.

The recordings therefore disprove Plaintiffs' allegations that detention officers assaulted and beat him and then ignored and left him to suffer and die. And, moreover, Plaintiffs' own forensic pathology expert in this case concluded in his report that Mr. Terry died of internal hemorrhage resulting from his use

---

Evid. 902 Notes of Advisory Committee on 2017 Amendments ("The amendment sets forth a procedure by which parties can authenticate certain electronic evidence other than through the testimony of a foundation witness. As with the provisions on business records in Rules 902(11) and (12), the Committee has found that the expense and inconvenience of producing a witness to authenticate an item of electronic evidence is often unnecessary….").

³ *See* Exhibit 1 (Declaration of Candice Kelley); Exhibit 2 (Declaration of Artur Zigman). The County submits the referenced video recordings through the Dropbox link referenced in Exhibit 1. The link is password protected and County will submit the password to the Court (through its case manager) and Plaintiffs (through their counsel). The County will also submit a flash drive to the Court containing referenced video recordings. The Dropbox link is: https://www.dropbox.com/scl/fo/bdj9mogd2r4973jhdbutm/AKpOjY9jv2M9FX36TJrYz94?rlkey=847uw3tnlju4drxcf24obj7w3&st=g5t9t8gs&dl=0.

of brodifacoum (a powerful warfarin-like anticoagulant and potent poison commonly used as rodenticide) that had been mixed with the K2 (a psychoactive synthetic cannabinoid usually sprayed or mixed with tobacco or marijuana and smoked).[4] Plaintiffs' pleading is a fiction.

## Argument and Authorities

I.  Rule 56 requires district courts to grant summary judgment where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court **shall** grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (emphasis added). The U.S. Court of Appeals for the Fifth Circuit "reviews *de novo* a district court's grant of summary judgment, applying the same standard as the district court." *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017).

---

[4]  *See* Exhibit 3 (filed December 9, 2025), pp. 8-9.

7

II. **The County is entitled to summary judgment on all Plaintiffs' claims because evidence disproves the essential element of causation.**

Under 42 U.S.C. § 1983, municipalities are not vicariously liable for the unconstitutional actions of their employees. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A plaintiff seeking relief against a municipality (such as a county) must establish that the allegedly unconstitutional conduct is "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).[5] In general, this requires the plaintiff to (1) identify an official policy, (2) that was promulgated by a municipal policymaker, and (3) that was the moving force behind the violation of a constitutional right. *See Verastique v. City of Dallas, Tex.*, 106 F.4th 427, 432 (5th Cir.), *cert. denied*, 145 S. Ct 772 (2024) (quoting *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023)).

Municipal liability claims on policies or practices generally arise under two theories: (1) claims based on conditions of confinement, or (2) claims based on "episodic acts or omissions." *See Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). Claims based on conditions of confinement are "attacks on

---

[5]   *See also Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008) ("A 'municipality,' which in this [section 1983] jurisprudence includes other local governmental units such as a county, is a 'person.'").

8

general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc). They generally concern "durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza*, 922 F.3d at 633-34.

In contrast, claims based on episodic acts or omissions involve "a particular act or omission of one or more officials" and "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). So, "[w]hereas conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was applied by a jail official in a particular instance." *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 497 (W.D. Tex. 2020) (citing *Estate of Henson v. Wichita County, Tex.*, 795 F.3d 456, 466-67 (5th Cir. 2015)).

A. **The evidence disproves causation for Plaintiffs' claims for conditions-of-confinement and their allegation that County detention officers beat and then ignored Mr. Terry.**

Because pretrial detainees have not been convicted of a crime, conditions of confinement that "amount to punishment" are unconstitutional. *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Punishment will be inferred "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless...." *Garza*, 922 F.3d at 632 (quoting *Bell*, 441 U.S. at 539). Conditions of confinement that amount to punishment can arise from either an explicit policy or "an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials." *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645) (alteration in original).

Because the conditions are challenged as amounting to a policy or practice, a plaintiff asserting a conditions-of-confinement claim need not show that an individual state actor acted knowingly or intentionally. *See Estate of Henson*, 795 F.3d at 463. Instead, to prevail on such a claim, the plaintiff must show: (1) that a rule or restriction or custom or practice was extensive or pervasive; (2) that the rule, restriction, custom, or practice was not reasonably

related to a legitimate governmental objective; and (3) that the rule, restriction, custom, or practice was the moving cause of the violation of the inmate's constitutional rights. *See Cadena*, 946 F.3d at 727 (quoting *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (per curiam)).

To show causation for a conditions-of-confinement claim, the plaintiff must establish that practice or custom was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)); *see also Spiller v. City of Texas City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (the plaintiff must allege facts showing that "the custom or policy served as the moving force behind the constitutional violation") (cleaned up).

### 1. The evidence disproves causation for Plaintiffs' conditions-of-confinement claim for institutionalized excessive force by jail employees.

In this case, even assuming the existence of a policy, custom, or practice (which the County denies), the evidence disproves the essential elements of Plaintiffs' conditions-of-confinement claim for institutionalized excessive force by jail employees against detainees. In particular, the evidence disproves that any alleged County policy, custom, or practice of institutionalized excessive

force by jail employees against detainees caused or was the moving the force behind any alleged injury or harm to Mr. Terry. More specifically, the evidence disproves that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs. Indeed, as outlined above, the video recording evidence disproves that any County jail detention officers assaulted or beat Mr. Terry and then ignored and left him to suffer and die. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for institutionalized excessive force by jail employees against detainees.

2. **The evidence disproves causation for Plaintiffs' conditions-of-confinement claim for failure to provide medical care or sufficient medical care.**

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), the evidence disproves the essential elements of Plaintiffs' conditions-of-confinement claim for failure to provide medical care or sufficient medical care to detainees. In particular, the evidence disproves that any alleged County policy, custom, or practice of failing to provide medical care, sufficient medical care, or timely medical care to detainees caused or was the moving the force behind any alleged injury or harm to Mr. Terry. More specifically, the evidence disproves that any such policy, custom, or practice was

12

"closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs. Indeed, as outlined above, the video recording evidence not only disproves that any County jail detention officers assaulted or beat Mr. Terry and then ignored and left him to suffer and die, but also proves that officers and medical staff promptly responded to assist and render aid to him and that he was then transported away from the jail in an ambulance to the hospital where he was pronounced deceased. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for failure to provide medical care or sufficient medical care.

### 3. The evidence disproves causation for Plaintiffs' conditions-of-confinement claim for failure to observe and monitor.

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), the evidence disproves the essential elements of Plaintiffs' conditions-of-confinement claim for failure to observe and monitor detainees. In particular, the evidence disproves that any alleged County policy, custom, or practice of failing to observe and monitor detainees caused or was the moving the force behind any alleged injury or harm to Mr. Terry. More specifically, the evidence disproves that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional

violation complained of" by Plaintiffs. Indeed, as outlined above, the video recording evidence not only disproves that any County jail detention officers assaulted or beat Mr. Terry and then ignored and left him to suffer and die, but also proves that officers and medical staff promptly responded to assist and render aid to him before he was then transported away from the jail in an ambulance to the hospital where he was pronounced deceased. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for failure to observe and monitor.

### 4. The evidence disproves causation for Plaintiffs' conditions-of-confinement claim for a culture of violence among detainees.

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), the evidence disproves the essential elements of Plaintiffs' conditions-of-confinement claim for promulgating or allowing a culture of violence among detainees. In particular, the evidence disproves that any alleged County policy, custom, or practice of promulgating or allowing a culture of violence among detainees caused or was the moving the force behind any alleged injury or harm to Mr. Terry. More specifically, the evidence disproves that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained

14

of" by Plaintiffs. Indeed, as outlined above, the video recording evidence disproves that any other detainees assaulted or beat Mr. Terry or that any County jail detention officers allowed or failed to intervene or protect him from any such assault or beating. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for a culture of violence among detainees.

### 5. The evidence disproves causation for Plaintiffs' conditions-of-confinement claim for systemic understaffing or overcrowding.

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), the evidence disproves the essential elements of Plaintiffs' conditions-of-confinement claim for systemic understaffing or overcrowding. In particular, the evidence disproves that any alleged County policy, custom, or practice systemic of understaffing or overcrowding caused or was the moving the force behind any alleged injury or harm to Mr. Terry. More specifically, the evidence disproves that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs. Indeed, as outlined above, the video recording evidence not only disproves that any County jail detention officers assaulted or beat Mr. Terry and then ignored and left him to suffer and die, but

15

also disproves that any other detainees assaulted or beat Mr. Terry or that any officers allowed or failed to intervene or protect him from any such assault or beating. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for systemic understaffing or overcrowding.

B. **The evidence disproves causation for Plaintiffs' claim for failure to train and their allegation that County detention officers beat and then ignored Mr. Terry.**

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), the evidence disproves the essential elements of Plaintiffs' claim for failure to train. In particular, the evidence disproves that any alleged County failure to train or adequately or properly train any County jail detention officers caused or was the moving the force behind any alleged injury or harm to Mr. Terry. More specifically, the evidence disproves that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs. Indeed, as outlined above, the video recording evidence not only disproves that any County jail detention officers assaulted or beat Mr. Terry and then ignored and left him to suffer and die, but also disproves that any other detainees assaulted or beat Mr. Terry or that any officers allowed or failed to intervene or

16

protect him from any such assault or beating. The County is therefore entitled to summary judgment on Plaintiffs' claim for failure to train.

### C. The evidence disproves causation for Plaintiffs' claim for failure to supervise and their allegation that County detention officers beat and then ignored Mr. Terry.

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), the evidence disproves the essential elements of Plaintiffs' claim for failure to supervise. In particular, the evidence disproves that any alleged County failure to supervise or properly supervise any County jail detention officers caused or was the moving the force behind any alleged injury or harm to Mr. Terry. More specifically, the evidence disproves that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs. Indeed, as outlined above, the video recording evidence not only disproves that any County jail detention officers assaulted or beat Mr. Terry and then ignored and left him to suffer and die, but also disproves that any other detainees assaulted or beat Mr. Terry or that any officers allowed or failed to intervene or protect him from any such assault or beating. The County is therefore entitled to summary judgment on Plaintiffs' claim for failure to supervise.

17

## Conclusion and Prayer

For these reasons, Defendant Harris County, Texas respectfully requests the Court to grant this Motion for Summary Judgment on Evidence Grounds and also grant any and all such other and further relief, whether at law or in equity, to which it may be entitled.

Respectfully submitted,

FELDMAN & FELDMAN, P.C.

By: /s/ Cris Feldman
    Cris Feldman
    Attorney-in-Charge
    Texas Bar No. 24012613
    S.D. Texas Bar No. 712459
    cris.feldman@feldman.law
    Fernando De Leon
    Of Counsel
    Texas Bar No. 24025325
    S.D. Texas Bar No. 32395
    fernando.deleon@feldman.law
    3355 West Alabama, Suite 1220
    Houston, Texas 77098
    Telephone: (713) 986-9471
    Facsimile: (713) 986-9472

*Attorneys for Defendant*
*Harris County, Texas*

**[remainder of page intentionally left blank]**

Certificate of Service

      I hereby certify that a true and correct copy of the foregoing motion has been served on the following parties and/or counsel of record by filing it with the Court's electronic-filing system on February 20, 2026:

Paul A. Grinke
paul@bencrump.com
Aaron Dekle
BEN CRUMP LAW, PLLC
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034

*Attorneys for Plaintiffs
Robert Terry Jr. and Lisa Foster
Individually, and as next friends of
Robert Andrew Terry*

Carl L. Evans, Jr.
cevans@mccathernlaw.com
Alizbeth A. Guillot
aguillot@mccathernlaw.com
Jordan A. Carter
jcarter@mccathernlaw.com
MCCATHERN, PLLC
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219

*Attorneys for Plaintiffs
Robert Terry Jr. and Lisa Foster
Individually, and as next friends of
Robert Andrew Terry*

Andrea Chan
achan@olsonllp.com
OLSON & OLSON, L.L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019

*Attorneys for Defendant
Harris County, Texas*

      By:   */s/ Fernando De Leon*
          Fernando De Leon