# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT TERRY JR.; and LISA FOSTER INDIVIDUALLY, AND AS NEXT FRIENDS OF THEIR DECEASED SON ROBERT ANDREW TERRY,<br>　　　Plaintiffs,<br><br>v.<br><br>Harris County, Texas,<br>　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br><br>Civil Action No. 4:24-CV-3068<br>(Judge Hittner presiding) |

## Defendant Harris County's
## Second Motion for Summary Judgment on No-Evidence Grounds

FELDMAN & FELDMAN, P.C.

Cris Feldman
Attorney-in-Charge
cris.feldman@feldman.law
Fernando De Leon
Of Counsel
fernando.deleon@feldman.law
3355 West Alabama, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472

*Attorneys for Defendant*
*Harris County, Texas*

Defendant Harris County, Texas (the "County") files this Second Motion for Summary Judgment on No-Evidence Grounds and, in support thereof, would respectfully show the Court as follows:

## Introduction and Summary

The County asks the Court to grant summary judgment in its favor on all claims asserted against it in this suit by Plaintiffs Robert Terry Jr. and Lisa Foster ("Plaintiffs"). Plaintiffs filed suit against the County asserting *Monell* claims under 42 U.S.C. § 1983.[1] They assert conditions-of-confinement, failure to train and supervise, and wrongful death claims arising from the death of their son Robert Terry ("Terry") that allegedly occurred as result of conduct by County jail detention officers while he was in the County jail.

In their (live) first amended complaint, Plaintiffs allege that detention officers assaulted and beat Mr. Terry and then over the next three days ignored and left him to suffer and die despite his screams of agony and requests for medical care. [Dkt. 13, pp. 7, 9-11.] In their proposed second amended complaint, which they now seek to file following the County's two prior summary judgment motions confirming that their live complaint is a total fiction, Plaintiffs changed

---

[1]     *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

their story and now allege that Mr. Terry died after detention officers failed to notice he was experiencing a medical emergency, denied him medical care even after realizing he was experiencing a medical emergency, and used excessive force to physically restrain him. [Dkt. 51-1, pp. 7-9, 11-14.] Moreover, Plaintiffs' own expert in this case has concluded that Mr. Terry died of internal hemorrhaging resulting from his use of a psychoactive synthetic cannabinoid known as K2 mixed with a rat poison known as brodifacoum.

The County is entitled to summary judgment on all Plaintiffs' claims because there is no evidence to support the essential element of causation for any of them. First, even assuming any alleged policy, custom, or practice (which the County denies), there is no evidence that any alleged County policy, custom, or practice caused or was the moving force behind any alleged injury or harm to Mr. Terry. In addition, even assuming any alleged failure to train or supervise (which the County also denies), there is likewise no evidence that any alleged County failure to train or properly train County detention officers or that any alleged County policy, custom, or practice of failing to do so caused or was the moving force behind any alleged injury or harm to Mr. Terry.

Indeed, there is no evidence to support causation in this case based on either version of their story under their live complaint or their proposed

2

amendment. As to their current first amended complaint, there is no evidence to support Plaintiffs' central factual allegation that County detention officers assaulted and beat Mr. Terry and then ignored and left him to die. As to their proposed second amended complaint, there is also no evidence in this case to support Plaintiffs' central factual allegation that detention officers failed to properly observe and monitor Mr. Terry while he was experiencing a medical emergency, failed to provide or request medical care for him after realizing he was experiencing a medical emergency, and then, after calling for medical care, permitted him to fall on the ground and used excessive force against him.[2] The County is therefore entitled to summary judgment on all Plaintiffs' claims because there is no evidence to support causation for any of them.

## Procedural Background and Allegations

On August 16, 2024, Plaintiffs filed their original complaint in this suit. [Dkt. 1.] On November 21, 2024, they filed their first amended complaint. [Dkt.

---

[2]    The County believes that Plaintiffs seek leave to file an amended complaint because their current first amended complaint does not adequately plead or state sufficient facts to support their new cause of action centered upon inadequate medical care. Nonetheless, out of an abundance of caution, the County directs this motion to both Plaintiffs' first amended complaint to the extent the Court believes it sufficiently alleges such facts and their proposed second amended complaint to the extent the Court grants them leave to amend.

13.] Plaintiffs assert *Monell* claims under 42 U.S.C. § 1983 against the County for alleging that Mr. Terry died as result of an incident that allegedly occurred at the County jail. [Dkts. 1, 13.] They assert claims for unconstitutional conditions-of-confinement arising from: (1) institutionalized excessive force by jail employees against detainees, (2) failure to provide medical care or sufficient medical care to detainees, (3) failure to observe and monitor detainees, (4) a culture of violence among detainees, and (5) systemic understaffing and overcrowding. [Dkt. 13, pp. 183-92.] They also assert claims for failure to train detention officers and failure to supervise detention officers. [Dkt. 13, pp. 192-96.] They also assert claims for wrongful death. [Dkt. 13, pp. 196-97.]

On May 13, 2023, Plaintiffs allege that Mr. Terry was booked into the Harris County jail. [Dkt. 13, p. 9.] They allege that, shortly after entering the jail, several detention officers unjustifiably dragged Mr. Terry to a holding cell known for beating detainees. [Dkt. 13, p. 9.] They allege that no cameras covered this cell. [Dkt. 13, p. 9.] They allege that the guards then handcuffed Mr. Terry to an item in the room, beat him significantly until there was blood on the walls, and then dragged his unconscious body back to his cell. [Dkt. 13, pp. 7, 9.] They allege that the beating caused Mr. Terry to suffer internal bleeding and blunt force trauma which should have been visible to the clinic staff. [Dkt. 13, p. 9.]

They allege that his internal bleeding and other injuries caused Mr. Terry to complain of nausea and lightheadedness. [Dkt. 13, p. 9.]

Plaintiffs allege that, over the next couple of days, the jail ignored Mr. Terry's numerous requests for medical attention, his screams of agony, and his vomiting and pooping blood which were clear signs of internal bleeding. [Dkt. 13, pp. 7, 9-11.] They allege that the jail staff failed to observe and monitor him appropriately and failed to respond to him until it was too late. [Dkt. 13, p. 7.] They allege he became lightheaded and passed out numerous times due to the loss of blood causing him to hit his head on the metal toilet and on the metal bars of his cell. [Dkt. 13, p. 7.] They allege that when officers did arrive, they dragged him out by his legs and stood around him for several minutes laughing at him, making fun of him, and claiming he was faking it before finally calling for medical care. [Dkt. 13, pp. 7, 10, 11.] They allege that, by this time, it was too late and he passed away shortly thereafter. [Dkt. 13, pp. 7, 11.]

On February 13, 2026, the County filed a motion for summary judgment on no-evidence grounds asserting there is no evidence to support causation for any claims they assert in their first amended complaint. [Dkt. 30.] On February 20, 2026, the County filed a motion for summary judgment on evidence grounds relying on extensive video recordings that disprove causation for all those

claims. [Dkt. 37.] More specifically, the County's summary judgment motions: (1) assert there is no evidence to support their sensational factual allegations that County detention officers assaulted and beat Mr. Terry and then over the next three days ignored and left him to die, and (2) disprove those allegations with extensive video recording that prove and confirm Mr. Terry showed no signs of injury or distress from the time he was booked into jail on May 13, 2023, until almost three days later when he died on May 16, 2023. Moreover, Plaintiffs' own forensic pathology expert in this case concluded in his report that Mr. Terry died of internal hemorrhaging resulting from his use of brodifacoum (a powerful warfarin-like anticoagulant and potent poison commonly used as rodenticide) that had been mixed with the K2 (a psychoactive synthetic cannabinoid usually sprayed or mixed with tobacco or marijuana and smoked).[3]

On March 16, 2026, Plaintiffs filed a motion for leave to file another amended complaint essentially conceding that their live complaint is a fiction. [Dkt. 51.] In their proposed second amended complaint, Plaintiffs have totally changed their story and now allege that Mr. Terry died after detention officers first failed to properly observe and monitor him while he was experiencing a medical emergency, failed to provide or request medical care for him even after

---

[3]      *See* Exhibit 1 (dated December 9, 2025), pp. 8-9.

realizing he was experiencing a medical emergency, and then, after calling for medical care, permitted him to fall on the ground and used excessive force against him to physically restrain him. [Dkt. 51-1, pp. 7-9, 11-14.]

The County now files this additional motion for summary judgment on no-evidence grounds asserting there is no evidence to support causation for any claims that Plaintiffs assert to the extent not based on their now disproved and discredited allegations that detention officers assaulted and beat Mr. Terry and then ignored and left him to suffer and die. More specifically, the County seeks summary judgment on the ground that there is no evidence in this case to support any allegation that detention officers failed to properly observe and monitor Mr. Terry while he was experiencing a medical emergency, failed to provide or request medical care for him after realizing he was experiencing a medical emergency, and then, after calling for medical care, permitted him to fall on the ground and used excessive force against him. As noted above, the County directs this motion to their first amended complaint to the extent the Court believes it sufficiently alleges such facts as well as their proposed second amended complaint to the extent the Court grants them leave to amend.

7

Argument and Authorities

I.    Rule 56 requires district courts to grant summary judgment where there is no evidence of an essential element of a plaintiff's claim.

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (emphasis added). The U.S. Court of Appeals for the Fifth Circuit "reviews *de novo* a district court's grant of summary judgment, applying the same standard as the district court." *See Austin v. Kroger Tex., L.P.,* 864 F.3d 326, 328 (5th Cir. 2017).

Where the movant bears the burden of proof at trial, the movant must establish "'all of the essential elements of the claim or defense to warrant judgment in his favor. Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial.'" *Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted).

But "[w]here the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when there is sufficient evidence

8

favoring the nonmoving party for a jury to return a verdict for that party is a full trial on the merits warranted." *Id.* at 301-02 (citation omitted).

"Under federal law, … it has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin*, 864 F.3d at 335 (citations omitted). *See also id.* ("Kroger satisfied its summary judgment burden when it alleged that there was **no evidence** of causation—an element essential to Austin's ordinary negligence claim.") (emphasis added).[4]

---

[4]　*See also Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir. 1999) ("When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc) (noting that the party moving for summary judgment is not required to "negate the elements of the nonmovant's case," but may "satisfy [its] burden under *Celotex*" by "assert[ing the] absence of facts supporting the elements of the plaintiffs' theory of recovery.").

II.   **The County is entitled to summary judgment on all Plaintiffs' claims because there is no evidence to support the essential element of causation for any of them.**

Under 42 U.S.C. § 1983, municipalities are not vicariously liable for the unconstitutional actions of their employees. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may be liable under 42 U.S.C. § 1983 for the actions of its employees only if the employees acted in accordance with an official "policy or custom" of the municipality. *See Monell*, 436 U.S. at 694.[5] "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of the constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Such municipal liability claims generally arise under two theories: (1) claims based on "conditions of confinement," or (2) claims based on "episodic acts or omissions." *See Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019).[6]

---

[5]   *See also Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008) ("A 'municipality,' which in this [section 1983] jurisprudence includes other local governmental units such as a county, is a 'person.'").

[6]   Claims based on conditions of confinement are "attacks on general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc). They generally concern "durable restraints or impositions on inmates' lives like overcrowding,

10

A.　　There is no evidence of causation for Plaintiffs' conditions-of-confinement claims because there is no evidence to support their factual allegations.

To prevail on a claim of unconstitutional conditions of confinement, a plaintiff must show: "(1) a rule or restriction or … the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of the inmate's constitutional rights." *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (cleaned up) (citations omitted). To show causation for such a claim, the plaintiff must establish that the policy, practice, or custom was "closely related to the ultimate injury" and "actually caused" the constitutional violation

---

deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza*, 922 F.3d at 633-34. In contrast, claims based on episodic acts or omissions involve "a particular act or omission of one or more officials" and "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). So, "[w]hereas conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was applied by a jail official in a particular instance." *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 497 (W.D. Tex. 2020) (citation omitted.

complained of. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoted citation omitted).

1.    **There is no evidence to support causation for Plaintiffs' conditions-of-confinement claim for institutionalized excessive force by jail employees.**

In this case, even assuming the existence of a policy, custom, or practice (which the County denies), there is no evidence to support the essential elements of Plaintiffs' conditions-of-confinement claim for institutionalized excessive force by jail employees against detainees. In particular, there is no evidence that any alleged County policy, custom, or practice of institutionalized excessive force by jail employees against detainees caused or was the moving force behind any alleged injury or harm to Mr. Terry.

More specifically, there is no evidence that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs. Indeed, there is no evidence that any County detention officers or other personnel used excessive force in restraining Mr. Terry. There is also no evidence that any detention officers assaulted or beat Mr. Terry or that any detention officers allowed or failed to intervene or protect him from any such assault or beating. The County

is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for institutionalized excessive force.

### 2. There is no evidence to support causation for Plaintiffs' conditions-of-confinement claim for failure to provide medical care or sufficient medical care.

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), there is no evidence to support the essential elements of Plaintiffs' conditions-of-confinement claim for failure to provide medical care or sufficient medical care to detainees. In particular, there is no evidence that any alleged County policy, custom, or practice of failing to provide medical care, sufficient medical care, or timely medical care to detainees caused or was the moving force behind any alleged injury or harm to Mr. Terry. More specifically, there is no evidence that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs.

Indeed, there is no evidence that any County detention officers or other personnel failed to notice Mr. Terry was experiencing any medical emergency or denied him medical care after realizing he was experiencing a medical emergency. Nor is there is any evidence that any County detention officers or other personnel received notification of a medical emergency in any manner

13

and failed to properly act and thus caused Mr. Terry's death. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for failure to provide medical care.

> ### 3.    There is no evidence to support causation for Plaintiffs' conditions-of-confinement claim for failure to observe and monitor.

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), there is no evidence to support the essential elements of Plaintiffs' conditions-of-confinement claim for failure to observe and monitor detainees. In particular, there is no evidence that any alleged County policy, custom, or practice of failing to observe and monitor detainees caused or was the moving force behind any alleged injury or harm to Mr. Terry. More specifically, there is no evidence that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs.

Indeed, there is no evidence that any County detention officers or other personnel failed to notice Mr. Terry was experiencing any medical emergency or denied him medical care after realizing he was experiencing a medical emergency. Nor is there is any evidence that County detention officers or other personnel received notification of a medical emergency in any manner and

failed to properly act and thus caused Mr. Terry's death. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for failure to observe and monitor detainees.

### 4. There is no evidence to support causation for Plaintiffs' conditions-of-confinement claim for a culture of violence among detainees.

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), there is no evidence to support the essential elements of Plaintiffs' conditions-of-confinement claim for promulgating or allowing a culture of violence among detainees. In particular, there is no evidence that any alleged County policy, custom, or practice of promulgating or allowing a culture of violence among detainees caused or was the moving force behind any alleged injury or harm to Mr. Terry. More specifically, there is no evidence that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs. Indeed, there is no evidence that any other detainees assaulted or beat Mr. Terry or that any County detention officers allowed or failed to intervene or protect him from any such assault or beating. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for a culture of violence among detainees.

5. **There is no evidence to support causation for Plaintiffs' conditions-of-confinement claim for systemic understaffing or overcrowding.**

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), there is no evidence to support the essential elements of Plaintiffs' conditions-of-confinement claim for systemic understaffing or overcrowding. In particular, there is no evidence that any alleged County policy, custom, or practice systemic understaffing or overcrowding caused or was the moving force behind any alleged injury or harm to Mr. Terry. More specifically, there is no evidence that any such policy, custom, or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs.

Indeed, there is no evidence that any County detention officers or other personnel failed to notice that Mr. Terry was experiencing any medical emergency, denied him medical care after realizing he was experiencing any medical emergency, or used excessive force in restraining him. Nor is there is any evidence that any County detention officers or other personnel received notification of a medical emergency in any manner and failed to properly act and thus caused Mr. Terry's death. There is also no evidence that any County detention officers assaulted or beat Mr. Terry or that any detention officers

16

allowed or failed to intervene or protect him from any such assault or beating. There is also no evidence that any other detainees assaulted or beat Mr. Terry or that any County detention officers allowed or failed to intervene or protect him from any such assault or beating. The County is therefore entitled to summary judgment on Plaintiffs' conditions-of-confinement claim for systemic understaffing or overcrowding.

B. **There is no evidence to support causation for Plaintiffs' claims for failure to train or supervise because there is no evidence to support their factual allegations.**

To prevail on a claim of failure to train or supervise, "'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 379 (5th Cir.2005) (citations omitted).

Similarly, even assuming the existence of a policy, custom, or practice (which the County denies), there is no evidence to support the essential elements of Plaintiffs' claims for failure to train or supervise. In particular, there is no evidence that any alleged County failure to train or supervise or failure to adequately or properly train or supervise any County detention officers or other

17

personnel caused or was the moving force behind any alleged injury or harm to Mr. Terry. More specifically, there is no evidence that any such alleged failure was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of" by Plaintiffs.

Indeed, there is no evidence that any County detention officers failed to notice Mr. Terry was experiencing any medical emergency, denied him medical care after realizing he was experiencing any medical emergency, or used excessive force in restraining him. Nor is there is any evidence that any County detention officers or other personnel received notification of a medical emergency in any manner and failed to properly act and thus caused Mr. Terry's death. There is also no evidence that any County detention officers assaulted or beat Mr. Terry or that any detention officers allowed or failed to intervene or protect him from any such assault or beating. There is also no evidence that any other detainees assaulted or beat Mr. Terry or that any detention officers allowed or failed to intervene or protect him from any such assault or beating. The County is therefore entitled to summary judgment on Plaintiffs' claim for failure to train and supervise.

18

## Conclusion and Prayer

For these reasons, Defendant Harris County, Texas respectfully requests the Court to grant this Second Motion for Summary Judgment on No-Evidence Grounds and also grant any and all such other and further relief, whether at law or in equity, to which it may be entitled.

Respectfully submitted,

FELDMAN & FELDMAN, P.C.

By: ___/s/ Cris Feldman_____
    Cris Feldman
    Attorney-in-Charge
    Texas Bar No. 24012613
    S.D. Texas Bar No. 712459
    cris.feldman@feldman.law
    Fernando De Leon
    Of Counsel
    Texas Bar No. 24025325
    S.D. Texas Bar No. 32395
    fernando.deleon@feldman.law
    3355 West Alabama, Suite 1220
    Houston, Texas 77098
    Telephone: (713) 986-9471
    Facsimile: (713) 986-9472

*Attorneys for Defendant*
*Harris County, Texas*

*[remainder of page intentionally left blank]*

19

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing motion has been served on the following parties and/or counsel of record by filing it with the Court's electronic-filing system on April 1, 2026:

Paul A. Grinke
paul@bencrump.com
Aaron Dekle
BEN CRUMP LAW, PLLC
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034

*Attorneys for Plaintiffs*
*Robert Terry Jr. and Lisa Foster*
*Individually, and as next friends of*
*Robert Andrew Terry*

Carl L. Evans, Jr.
cevans@mccathernlaw.com
Alizabeth A. Guillot
aguillot@mccathernlaw.com
Jordan A. Carter
jcarter@mccathernlaw.com
MCCATHERN, PLLC
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219

*Attorneys for Plaintiffs*
*Robert Terry Jr. and Lisa Foster*
*Individually, and as next friends of*
*Robert Andrew Terry*

Shelby J. White
swhite@dpslawgroup.com
Thad D. Spalding
tspalding@dpslawgroup.com
Kathryn Womble
kwomble@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
*Attorneys for Plaintiffs*
*Robert Terry Jr. and Lisa Foster*
*Individually, and as next friends of*
*Robert Andrew Terry*

Andrea Chan
achan@olsonllp.com
OLSON & OLSON, L.L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019

*Attorneys for Defendant*
*Harris County, Texas*

By: ___*/s/ Fernando De Leon*___
　　　Fernando De Leon

20