# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT TERRY JR.; and LISA FOSTER INDIVIDUALLY, AND AS NEXT FRIENDS OF THEIR DECEASED SON ROBERT ANDREW TERRY, <br>     Plaintiffs, <br><br> v. <br><br> Harris County, Texas, <br>     Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br><br><br> Civil Action No. 4:24-CV-3068 <br> (Judge Hittner presiding) |

**Defendant Harris County's**
**Response in Opposition to Plaintiffs' Motion for Leave to Amend Complaint,**
**or in the *Alternative* Request for Trial Continuance, and *Unopposed* Motion**
**for Expedited Ruling**

FELDMAN & FELDMAN, P.C.

Cris Feldman
Attorney-in-Charge
cris.feldman@feldman.law
Fernando De Leon
Of Counsel
fernando.deleon@feldman.law
3355 West Alabama, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472

*Attorneys for Defendant*
*Harris County, Texas*

Defendant Harris County (the "County") files this Response in Opposition to Plaintiffs' Motion for Leave to Amend Complaint, or in the *Alternative* Request for Trial Continuance, and *Unopposed* Motion for Expedited Ruling and, in support thereof, would show the Court as follows:

## I.    SUMMARY OF ARGUMENT

This Court must deny Plaintiffs' Opposed Motion for Leave to Amend Complaint. Doc. #51. First, they mischaracterize the proposed amendment as innocuously abandoning a "pre-medical emergency excessive force claim" when in fact it does substantially more. *Id.* at ¶ 9. For the first time, Plaintiffs allege that a new, never before pleaded "post-medical emergency use of force" occurred. *Id.* at ¶ 13. And, importantly, by abandoning the allegation of "pre-medical" use of force, Plaintiffs alter their theory of the "moving force" of Terry's death and therefore an essential element of the County's alleged *Monell* liability.

Second, Plaintiffs lack good cause for an amendment after the pleading amendment deadline, after the close of discovery, after the motions deadline, after the expert designation deadline, on the eve of trial. Plaintiffs assert "the need to amend to eliminate Plaintiffs' pre-medical emergency excessive force claim only became known to Plaintiffs on March 12, 2026." Doc. #51 at ¶ 9. Such prevarication is belied by the procedural history of this case, related cases, and record evidence in the possession of Plaintiffs since at least July of 2024.

1

Finally, any proposed amendment at this stage of the case would be severely prejudicial against the County who has not had the opportunity to discover information about either Plaintiffs' new "post-medical" use of force or their new theory of *Monell* liability. As the parties are expected to submit pre-trial materials in three weeks for the May/June trial term, the County will not be able to fairly defend against such claims and hence will be severely prejudiced.

In the alternative, if the Court is inclined to grant leave to permit Plaintiffs to file their Second Amended Complaint, the County requests a trial continuance with an opportunity to adequately prepare a defense consistent with the new amended pleading. In that circumstance, the County requests the opportunity to seek additional discovery, ascertain any need for designation of experts, and an opportunity to file additional motions, including dispositive and pre-trial motions premised on the newly asserted factual and legal claims.

Additionally, because the County is hampered in its ability to make strategic defensive decisions or otherwise prepare a trial defense until this issue is resolved, the County asks for the Court to rule on Plaintiffs' Motion for Leave to Amend on an expedited basis.

## II.   PROCEDURAL BACKGROUND

The County faces severe prejudice should Plaintiffs be allowed to amend their complaint at the eleventh hour. Fifth Circuit authority further underscores why

Plaintiffs' eleventh-hour effort to amend is patently prejudicial. To illustrate this, a recitation of the procedural history of this case is necessary.

This lawsuit stems from the death of Robert Andrew Terry (hereinafter "Terry") while he was in custody at the County jail. However, this is not the first suit involving the death of Mr. Terry. The first complaint arising from the death of Terry was filed in June 2023, in *Thomas v. Gonzalez*, Civil Action 4:23-cv-02098, in the U.S. District Court for the Southern District of Texas, Houston Division (Judge Hanks presiding). In that suit, Thomas, on behalf of Terry's surviving child, sued Sheriff Ed Gonzalez and Esmaeil Porsa, the president of the Harris Health System. *See* Exhibit 1. Thomas alleged that Terry entered the jail in an ill condition and was continuously denied medical care until his death on May 16, 2023. Thomas made no allegations in either the original complaint or the amended complaint in that case that Terry was subjected to use of force. *See* Exhibit 1. On September 30, 2024, the Thomas suit was dismissed for failure to state a claim.

About a month prior to dismissal of *Thomas*, on August 16, 2024, Plaintiffs filed this suit. Doc. #1. Plaintiffs were aware of the existence of the *Thomas* suit because they disclosed it in the Joint Discovery/Case Management Plan on October 22, 2024. Doc. #9. Still, Plaintiffs' allegations in this suit differed markedly from those in *Thomas*, asserting instead that use of force resulted in Terry's death and that such use of force arose due to jail conditions that incited a culture of violence,

including understaffing and overcrowding. In the original complaint in this suit, Plaintiffs allege Terry's death was caused by numerous County officers beating Terry, causing severe injuries that were ignored:

11. Within one day of being in the Harris County Jail, the jail officials misclassified Mr. Terry placing him in the incorrect cells for his known mental and physical condition. On that same day, numerous officers beat Mr. Terry unjustifiably causing him severe injuries including internal bleeding and a head injury. Over the next couple of days, the jail ignored his numerous requests for medical attention, his screams of agony, and his vomiting and pooping blood which were clear signs of internal bleeding. The jail staff failed to observe and monitor him appropriately and failed to respond to him until it was too late. He became light headed and passed out numerous times due to the loss of blood causing him to hit his head on the metal toilet and on the metal bars of his cell. When officers did arrive, they dragged him out by his legs, and stood around and laughed at him for several minutes before finally calling for medical care. By this time it was too late, Mr. Terry passed away shortly thereafter.

*See* Doc. #1 at ¶ 11.

In their First Amended Complaint filed in November 2024, Plaintiffs continued their salacious theme that Terry's death had resulted from brutal and unjustified use of force by County staff:

22. Shortly after entering the jail, several officers unjustifiably dragged Mr. Terry to a holding cell known for beating detainees. No cameras covered this cell. The guards then handcuffed Mr. Terry to an item in the room, beat him significantly until there was blood on the walls, and then dragged his unconscious body back to his cell.

23. Mr. Terry was left to anguish for a long period of time before he was sent to the clinic. Mr. Terry was not sent for his injuries to be looked after, but so that he could be transferred to new housing. The beating caused Mr. Terry to suffer internal bleeding and blunt force trauma which should have been visible to the clinic staff. The internal bleeding and his other injuries caused Mr. Terry to complain of nausea and lightheadedness.

24. The medical staff failed to note Mr. Terry's injuries or the fact that he was recently beaten, but instead ordered a chest x-ray at 1:47 a.m. on May 15, 2023, to look at Mr. Terry's heart and lungs. The medical staff did not evaluate him for a head injury or for potential internal hemorrhaging which would have been consistent with his complaints.

30. Upon inspection of Mr. Terry's corpse, blood was found in his lower intestines and in the upper interior portions of his leg (a sign of internal bleeding), lacerations were found on his body, and he had a fractured skull. Clear indications of a brutal beating resulting in death.

Doc. #13 at ¶¶ 22-30.

Terry's death is described in yet a third suit. In November 2023, nearly a year before *Terry* was filed, the plaintiffs in the *Wagner* suit (who are also represented by

Plaintiff's counsel in this suit) filed their First Amended Complaint. *See Wagner v. Harris County*, Civil Action 4:23-cv-02886, in the U.S. District Court for the Southern District of Texas, Houston Division (Ellison presiding). The *Wagner* plaintiffs alleged:

> **xxxi.    Robert Terry Jr.**
>
> 838.    On May 13, 2023, Robert Terry Jr. was booked into the Harris County Jail.
>
> 839.    On May 16, 2023, Mr. Terry pressed the intercom button in a multi-occupancy cell, fell to the floor clutching his stomach, began to foam at the mouth, and tried crawling to the dayroom.

> 840.    The officers failed to notice Mr. Terry's initial need for medical attention; however, it took medical personnel 90 minutes to arrive. The jailers did not attempt to render aid but stood around, laughed, and taunted Mr. Terry.
>
> 841.    Mr. Terry passed away later that morning.
>
> 842.    Failure to provide Mr. Terry with medication and medical attention for his known medical needs but instead laughing and taunting him for 90 minutes led to the deprivation of Mr. Terry's constitutional rights by being deliberately indifferent to the known and obvious risk that led to Mr. Terry's death.

*See* Exhibit 2.

Plaintiffs' counsel in this suit was aware of the allegations in *Wagner* not only because they are counsel in both cases, but also because *Wagner* was also disclosed

in the *Terry* Joint Discovery/Case Management Plan on October 22, 2024. Doc. #9. Yet, when describing the circumstances of Terry's death as a comparator in the *Wagner* suit, no use of force was mentioned on either a pre-medical or post-medical basis, no misdiagnosis by medical staff is mentioned, and only the denial of medical care for a very specific time period of 90 minutes was alleged.

In this suit, amendments to pleadings were due on December 13, 2024. Doc. #17. Yet, no further amendment was made, even though it was obvious that markedly different factual allegations had been asserted in both *Thomas* and *Wagner*. The parties proceeded to litigate this suit, with the County—as it must—relying on the theory in the live pleading that Terry had died because of use of force by County staff resulting in severe injuries that lead to his death.

In May and August 2025, the Court granted the parties' requests to modify deadlines. Docs. #22, #24. Despite the parties' joint request in December 2025, the Court declined to further extend deadlines. Doc.# 27. Therefore, expert designations were due in December 2025 and January of 2026 respectively. Doc. #24.

Plaintiffs timely produced the Victor Weedn expert report on December 9, 2025. At that time, Weedn opined that Terry died not from blunt force trauma from a beating, but as a result of drugs:

**Opinion:**

My opinion as a forensic pathologist with over 35 years of experience as a board-certified forensic pathologist is that Mr. Terry died of internal hemorrhage from brodifacoum, which had been admixed with the K2 that Mr. Terry took.

Mr. Terry sustained head trauma, including a scalp laceration, skull fracture, and brain contusion. The injury pattern suggests he fell backward onto the floor, as indicated by the mid-occipital location and sagittal skull fracture, along with mild contrecoup brain injuries. These injuries were not fatal; the brain was only slightly swollen, and no vital structures were damaged. Mr. Terry was conscious and responsive before his cardiac arrest. The methamphetamine level was low. Amphetamine, a metabolite of methamphetamine, was present in higher amounts than the parent drug, indicating it was ingested much earlier, likely before Mr. Terry was booked into jail.

*See* Exhibit 3.

Plaintiffs also timely produced the Lenard Vare expert report on December 9, 2025. Therein Vare describes a handcuffing incident occurring during the medical treatment of Terry in the medical clinic:

- **DO Jayson Rubio** reported that he saw Terry in the medical clinic area at around 6:15 a.m. Rubio noted that multiple officers tried to help Terry stand, but Terry kept pulling away from their grasp and swinging his arms to prevent anyone from holding him. ***Rubio observed numerous officers attempting to apply restraints. According to Rubio, Terry's right wrist was secured in restraints while several officers tried to control his left arm and place it behind his back.*** After several attempts, Terry's left arm was secured behind

*See* Exhibit 4.

Still, no amendment was sought to eliminate the claim that Terry had been beaten to death by County staff or to add the claim that excessive force had been used on Terry in the medical clinic because of handcuffing. Discovery closed on March 16, 2026. Doc. #24. Also on March 16, 2026, just shy of three years since the first legal action involving Robert Terry's death was filed in *Thomas*, Plaintiffs filed their motion for leave to amend their complaint, mischaracterizing the amendment as a mere request to "remove their claim for the pre-medical emergency excessive force incident against Harris County." Doc. #51 at ¶ 4.

Since August 2024, the County has defended this matter based on the allegations in the live pleadings which asserted that Terry died ***because of use of force*** causing severe injuries including internal bleeding and head injury— allegations that were never supported by the discovery in the case and which were inconsistent with the pleadings in both *Thomas* and *Wagner*. Plaintiffs' repleading at the close of discovery is not merely 'dropping a claim' but a fresh reimagining of the events relating to Terry's death and a shift of the alleged moving force of his constitutional deprivation. Importantly, since no written policy supports *Monell* liability, Plaintiffs' ability to hold the County liable rests on whether Terry's case is factually substantially similar to those of other County jail detainees—and yet Plaintiffs are still materially rewriting their factual allegations as to Terry himself and doing so in a way that remains inconsistent with the characterization of Terry as

a comparator in the *Wagner* suit. This wholesale attempted repleading implicates all aspects of the case to date and must be rejected.

**A. First Amended Complaint Allegations**

In their First Amended Complaint filed on November 21, 2024, Plaintiffs alleged that detention officers handcuffed, beat, and dragged Terry ***which was the cause of his injuries*** including internal bleeding, blunt force trauma, nausea, and lightheadedness. Doc. #13 at ¶¶ 23, 30. Plaintiffs allege that "[u]pon inspection of Mr. Terry's corpse, blood was found in his lower intestines and in the upper interior portions of his leg (a sign of internal bleeding), lacerations were found on his body, and he had a fractured skull. Clear indications of a brutal beating resulting in death." Doc. #13 at ¶ 30. Plaintiffs' entire theory and allegations in their First Amended Complaint was that County detention officers beat and dragged Terry and caused him injuries, which then led to inadequate medical care and his death thereafter. Their allegations were not that Terry suffered a medical emergency which led to his death (as they allege in their proposed Second Amended Complaint), but rather a brutal beating which led to his death. Plaintiffs ***never*** alleged any excessive force by jail staff after Terry suffered an alleged medical emergency.

After discovery, the County filed two Motions for Summary Judgment, which are pending before this Court and were based upon the allegations in Plaintiff's First Amended Complaint. Docs. #30, #37. The County addressed all claims against it but

10

did not address claims of excessive force against Terry after any post-medical emergency he suffered, as those were not claims nor allegations asserted in Plaintiff's First Amended Complaint. The County then filed a third summary judgment motion addressing such allegations and others. Doc. #65.

### B. Proposed Second Amended Complaint Allegations

Now, on the eve of trial, Plaintiffs bring forth a proposed Second Amended Complaint where the factual allegations and claims are completely different from what they alleged in their First Amended Complaint. In their proposed Second Amended Complaint, Plaintiffs no longer allege that County detention officers beat or dragged Terry, but now argue a completely different factual scenario, in which Terry suffered a medical emergency that was not recognized timely, and that excessive force was used *after* his medical emergency occurred. Doc. #51-1 at ¶¶ 23-30. Plaintiffs now allege that after Terry had suffered a medical emergency, "The officers then used more force than necessary against him and got him handcuffed and put on the bed causing him injuries. He shortly after this became unresponsive and was eventually taken to the hospital where he was declared deceased." *Id.* at ¶ 29. These are not small changes, but rather a completely different theory with new claims of excessive force. Ultimately, since Plaintiffs cannot show good cause to amend in this case, this Court must deny their Motion for Leave.

# III.   ANALYSIS

## A. Standard of Review

Where a court's permission for leave to amend is required because the amendment is not a matter of course, leave should be "freely given when justice so requires." *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). This is a lenient standard, yet it ***does not apply*** if an amendment would require the modification of a previously entered scheduling order. *Id*. Instead, Rule 16(b) governs the amendment of pleadings "after a scheduling order's deadline to amend has expired." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

Once a scheduling order's deadline has passed, that scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). A party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Fahim*, 551 F.3d at 348 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). If a party shows good cause for missing the deadline, then the "more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend." *Id*.

There are four factors relevant to a determination of good cause under Rule 16(b)(4). They are: "(1) the explanation for the failure to timely move for leave to

amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (citing *Fahim*, 551 F.3d at 348). When analyzing these factors, Plaintiffs' Motion for Leave, filed less than two months before trial and after the passing of all pretrial deadlines in the Court's scheduling order, must be denied as these factors weigh heavily against Plaintiffs and in favor of the County. *See e.g., S&W Enters.*, 315 F.3d at 535.

**B**. **No Excuse for Failure to Timely Amend**

Plaintiffs' explanation for their failure to timely seek to amend is unsupported by the record. Their claim that they just recently learned new information, now asserted in their proposed Second Amended Complaint, is flatly disingenuous. Plaintiffs indisputably had full knowledge for nearly a year and a half that no "pre-medical" excessive force involving a violent beating occurred, yet now claim they did not learn these allegations were inaccurate until speaking with a detainee on March 12, 2026. Doc. #51 at ¶ 4. This "new" information Plaintiffs allege to have purportedly learned (that Terry was not in fact assaulted by detention officers prior to any medical emergency which contributed to this death) was known to them by at least July 15, 2024.

On February 6, 2024, in *Thomas*, Allie Booker, counsel for the plaintiff there, publicly filed, as Document 28-20, an exhibit to Thomas's Second Amended

13

Complaint, a copy of the Texas Rangers Custodial Death Investigation report of Terry's death. *See* Exhibit 5. Booker later filed her own affidavit affirming that she had this report from the Texas Rangers. *See* Exhibit 6. On July 15, 2024, the *Wagner* plaintiffs (who have the same counsel as Plaintiffs here) produced a copy of this same report with the file stamp reflecting the *Thomas* Docket Entry 28-20 and with Bates numbers Wagner 000613 to 000615. *See* Exhibit 7.

The report filed unrestricted in *Thomas*, later produced in *Wagner*, identifies by name every detainee in the pod with Terry on the night of his death. No detainee interviewed by the Texas Ranger reported that Terry had been subjected to use of force. Exhibit 5. Plaintiffs' counsel knew of the allegations in the *Thomas* suit as evidenced by their disclosure of the case in the joint case management plan and have known of the content of the Texas Rangers report since at least July 2024 when they produced it in *Wagner*. Doc. #9. Plaintiffs had this information well before their First Amended Complaint was filed in November 2024. Doc. #13.

Yet, Plaintiffs failed to properly amend their pleading in the four months between their Original Complaint filed in August 2024 and the December 13, 2024 pleading deadline in Terry, and still failed to seek leave to amend until March 2026. Even though the events described in Exhibit 5 describe Terry as having a medical need, there is no allegation in Plaintiffs' First Amended Complaint that Terry actually suffered any medical emergency ***independent*** of use of force. Plaintiffs only

14

alleged that a severely brutal beating by detention officers caused Terry's injuries and all the events that followed, leading to his death.

This is a material change to the alleged moving force of the alleged constitutional deprivation and a material change affecting the analysis of comparator detainees. Moreover, since November of 2023, Plaintiffs' counsel (the very same counsel in *Wagner*) has not altered the description of Terry's death in *Wagner* to conform with the new alternative theory now proposed in *Terry*. *See* Exhibit 2. Therefore, their failure to timely seek leave to reform their pleading to this long-known evidence and to make it consistent with the factual allegations pled in *Wagner* by the same counsel is inexcusable.

The Fifth Circuit has held that when the same facts were known to a plaintiff prior to filing a Motion for Leave to amend after the amendment deadline passes, the plaintiff effectively provided no real explanation of why the amendment was untimely filed. *See S&W Enters*., 315 F.3d at 536. In *S&W Enters*., the plaintiff S&W Enterprises moved to amend its complaint to comport with recent case law and add a new cause of action. *Id*. at 535. S&W Enterprises knew of the recent case law and factual allegations, and also knew of the additional claims which could have been asserted before the amendment deadline in the scheduling order had passed. *Id*. at 536-37. The Court held that since S&W Enterprises had knowledge of all of this prior to filing its motion for leave, it essentially offered no explanation as to its

failure to timely file. *Id*. The Court stated that this prong of the analysis therefore weighed in favor of defendant, as the plaintiff offered no explanation to the untimely Motion for Leave filed after the scheduling order deadlines had passed. *See id*.

As in *S&W Enters.*, Plaintiffs cannot now claim this information was newly discovered when they have long possessed it and have even produced documents explicitly demonstrating the different factual circumstances of Terry's death, including that no pre-medical emergency excessive force was ever alleged or reported by any detainee. Plaintiffs were fully aware of these facts well before the amendment deadline. The first prong of this analysis of whether an adequate explanation was provided for Plaintiffs' untimely motion for leave to amend leans heavily in favor of the County. Thus, Plaintiffs' assertion that they discovered "new" information, which would necessitate the removal of certain claims and addition of others, fails and should not be considered by this Court.

**C. Plaintiffs' Motion for Leave Will Unduly Prejudice the County**

Plaintiffs' Motion for Leave would unduly prejudice and burden the County. They sought leave only in reply to the County's Motion for Summary Judgment. [Doc. #51]. As shown above, Plaintiffs had ample time prior to the summary judgment stage to attempt to amend their complaint with the information they already possessed. However, they did not and only moved to amend their complaint in response to the County's motion for summary judgement.

Courts more "carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." *Par. v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999). The Fifth Circuit has held that denial of a motion for leave to amend complaint was not an abuse of discretion when the "district court found that plaintiff's attempts to broaden issues would likely require additional discovery and another summary judgment motion, unduly prejudicing defendants and raising concerns about seriatim presentation of facts and issues." *See id.* at 761. Moreover, the Fifth Circuit explained when evaluating a Motion for Leave filed untimely with new claims, that it was prejudicial against a defendant to allow such an amendment when there would likely be a need for additional discovery which would also include the possibility of obtaining experts. *See e.g., S&W Enters.*, 315 F.3d at 537.

Likewise, granting Plaintiffs' motion in this case would allow them to broaden the issues on which summary judgment has already been filed, would potentially require additional discovery, including an expert for the newly asserted excessive force claims, and require additional motions for summary judgment.

Furthermore, for the very first time, less than two months before trial, after discovery has closed, and after designation of expert deadlines has passed, Plaintiffs now request an amendment to add claims of "post-medical" excessive force after the

17

medical emergency Terry experienced. Given Plaintiffs seek leave to amend after the scheduling order deadlines, it is deemed untimely. *See id.* at 536.

In Plaintiffs' First Amended Complaint, there are no claims that Terry suffered excessive force during or after medical treatment. Instead, Plaintiffs alleged that jail staff beat Terry to the point of blood splattered walls and then disregarded his alleged injuries resulting from the alleged beating, all because of a culture of violence and callous disregard for detainee care. Plaintiffs' proposed Second Amended Complaint now alleges that Terry suffered a medical event which was ignored and then Terry suffered force during eventual treatment, causing injury. Doc. #51-1 at ¶ 29 ("The officers then used more force than necessary against him and got him handcuffed and put on the bed causing him injuries.").

As recently as the discovery hearing before Magistrate Judge Palermo, it was apparent that Plaintiffs are still rewriting their allegations. At that hearing Plaintiffs' counsel represented that they now believe that Terry died from internal bleeding caused by laced synthetic marijuana. *See* Exhibit 8, pg. 18, ln. 23 to pg. 19, ln. 10. But there is nothing new about this information because Plaintiffs not only served the report by their expert Dr. Weedn in December 2025 concluding that Terry died because of K2 synthetic marijuana use but they have also had Terry's autopsy report since at least May 14, 2025, which revealed the presence of a synthetic cannabinoid and methamphetamine. On June 12, 2025, the County also produced to Plaintiffs

215 videos confirming that Terry showed no signs of any beating or even distress consistent with any beating in the days before his medical emergency.

No discovery has been conducted to evaluate Plaintiffs' new claims of use of force during medical care resulting in injuries, including the taking of depositions of medical personnel or officers present during the medical treatment events. No testimony was solicited to determine if and when jail staff first learned of a medical emergency, as Plaintiffs' live pleading alleged that jail staff were the initial cause of the medical emergency due to alleged unjustified excessive force. No experts were engaged by the County to opine on any claim of injury arising during medical treatment or to opine whether Terry could or could not have survived the consequences of the laced K2 synthetic marijuana that he used, had treatment been rendered earlier.

Plaintiffs even concede that the County's first two motions for summary judgment focus on the "excessive, deadly force claim pre-medical emergency" and "solely look at the alleged use of force prior to Mr. Terry's medical emergency" and also go so far as to assert that their proposed amended pleading will offer the convenience of mooting the County's dispositive motions. Doc. #51 at ¶¶ 2, 13. That convenience is actually a prejudice to the County. Of course, the County's dispositive motions attack the pre-medical emergency use of force because that is the operative theory in the Plaintiffs' live pleading.

Plaintiffs cannot change facts to attempt to fit whatever narrative they choose, whenever it becomes convenient. With only two months before trial, this is the very first pleading in this case asserting that Terry died *only* due to delay of medical care and possibly due to use of force during medical care.

Plaintiffs' allegations are a moving target. It is patently prejudicial to allow such an amendment at this stage of the case as discovery and any expert designations or consideration of experts were based on the pending claims and allegations in Plaintiffs' live pleading as were the County's dispositive motions.

Plaintiffs' eleventh-hour revision of the moving force of the constitutional violation also has a prejudicial impact on the County's ability to defend against *Monell* liability and requires new analysis of comparator detainees to support their claims of custom and pattern. To support a claim against the County, Plaintiffs must plead "facts that plausibly establish: 'a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

In the absence of a formal policy Plaintiffs must show "a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston,* 237 F.3d 567, 582 (5th Cir. 2001). A pattern requires "sufficiently numerous prior incidents," not "isolated instances." *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989). Critically, the incidents must be sufficiently similar. "A pattern requires

similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the ***specific violation*** in question." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (emphasis added) (internal quotation marks and alteration omitted).

Plaintiffs' proposed Second Amended Complaint converts their claims based on Terry's death from a case of excessive force resulting in fatal injury compounded by delay of medical care, to a case of delay of medical care for a spontaneous medical event compounded by post-medical care use of excessive force. This leaves open to dispute the proper comparators to Terry's incident.

To now allow such an amendment with new claims less than two months before trial and when discovery deadlines have passed would put the County at an extreme disadvantage. This would "unduly prejudice the [the County]…" by allowing Plaintiffs to "raise wholly new causes of action after the deadline for amending pleadings had passed." *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013) (court found newly added claims after amendment deadline to be prejudicial). This third prong of the analysis is also in favor of denial. Plaintiffs' Motion for leave must be denied as it is highly prejudicial.

**E. Unnecessary Delay**

The Court should also deny leave to amend because County is entitled to certainty and finality based on Plaintiffs' live First Amended Complaint. The Court

should rule on the County's motions for summary judgment because there is no witness who can testify or any other evidence to prove that County detention officers or other personnel failed to properly and timely notice that Terry was experiencing any medical emergency or ignored him after realizing he was experiencing any medical emergency. Otherwise, the County should be allowed, and Plaintiffs should be required, to go to trial based on Plaintiffs' live First Amended Complaint—which they will surely lose for precisely the same lack of evidence.

Allowing this untimely amendment would result in an unnecessary delay for the County. By allowing Plaintiffs' proposed amendment, it would push back the trial date, extend discovery, and cause the County further expense during this litigation. In *Filgueira*, in denying leave to amend, the Fifth Circuit held that claims added after the amendment deadline would result in further expenses for the defendant and would extend litigation needlessly. *Id.* at 423-24. The Fifth Circuit has also found in similar cases, where motions for leave were filed after the scheduling deadline, that even if a continuance were granted, it would result in additional discovery and that a continuance would unnecessarily delay the trial and therefore leave to amend was denied. *See S&W Enters.*, 315 F.3d at 537.

Similarly, even with a continuance, the County would suffer unnecessary delay because it would extend the trial date and discovery deadlines, and require further expense such as the need for engagement of experts and undertaking

discovery and other efforts to defeat the newly added allegations of delayed medical care and excessive force claims that Plaintiffs seek to assert. Therefore, the fourth prong of the analysis also heavily leans in favor of the County. Due to this, Plaintiffs' Motion for leave must be denied.

**F.     In the alternative, the County is entitled to continuance**

As shown above, the County will be prejudiced if forced to defend itself at trial based on new allegations for which it has not had an opportunity to engage in discovery or address in motion practice. Therefore, the County asks that if this Court allows leave for Plaintiffs to amend, that the discovery, expert, and motion deadlines be reset and trial continued accordingly so that the County is afforded an opportunity to prepare to defend against the new claims for trial.

**G.     Expedited Ruling is Needed**

As the Court can appreciate, it is important for the parties to have finality on the issue of which pleading will be the live pleading for purposes of trial. Because this matter is set on the May/June 2026 docket, the parties are losing valuable trial preparation time without clarity as to which complaint and which claims will be the subject of trial, causing confusion and an inability to prepare in earnest for a trial that may begin within a month. Accordingly, an expedited ruling is requested.

**H.    Conclusion**

For the reasons stated above, Plaintiffs' Motion for Leave to Amend to File Second Amended Complaint must be denied as there is no good cause for such an amendment at this stage of the case. Accordingly, on an expedited basis, this Court should deny Plaintiffs' Motion for Leave to Amend Complaint and/or in the alternative grant the County's *Alternative* Request for Trial Continuance should leave be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant Harris County requests that this Court deny Plaintiff's Motion for Leave to Amend Complaint, grant the County's *Alternative* Request for Trial Continuance, grant the County's *Unopposed* Motion for Expedited Ruling, and grant all other relief to which it is entitled.

*[remainder of page intentionally left blank]*

Respectfully submitted,

FELDMAN & FELDMAN, P.C.

By:   */s/ Cris Feldman*
    Cris Feldman
    Attorney-in-Charge
    Texas Bar No. 24012613
    S.D. Texas Bar No. 712459
    cris.feldman@feldman.law
    Fernando De Leon
    Of Counsel
    Texas Bar No. 24025325
    S.D. Texas Bar No. 32395
    fernando.deleon@feldman.law
    3355 West Alabama, Suite 1220
    Houston, Texas 77098
    Telephone: (713) 986-9471
    Facsimile: (713) 986-9472

*Attorneys for Defendant*
*Harris County, Texas*

### Certificate of Conference

I hereby certify that I attempted to confer with counsel for Plaintiffs, Aaron Dekle, in an effort to resolve the issues stated in the foregoing motion without the necessity of court intervention and that the effort failed because such counsel stated that Plaintiffs oppose the motion.

By:   */s/ Fernando De Leon*
    Fernando De Leon

*[remainder of page intentionally left blank]*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing motion has been served on the following parties and/or counsel of record by filing it with the Court's electronic-filing system on April 6, 2026:

Paul A. Grinke
paul@bencrump.com
Aaron Dekle
BEN CRUMP LAW, PLLC
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034

*Attorneys for Plaintiffs*
*Robert Terry Jr. and Lisa Foster*
*Individually, and as next friends of*
*Robert Andrew Terry*

Carl L. Evans, Jr.
cevans@mccathernlaw.com
Alizabeth A. Guillot
aguillot@mccathernlaw.com
Jordan A. Carter
jcarter@mccathernlaw.com
MCCATHERN, PLLC
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219

*Attorneys for Plaintiffs*
*Robert Terry Jr. and Lisa Foster*
*Individually, and as next friends of*
*Robert Andrew Terry*

Shelby J. White
swhite@dpslawgroup.com
Thad D. Spalding
tspalding@dpslawgroup.com
Kathryn Womble
kwomble@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
*Attorneys for Plaintiffs*
*Robert Terry Jr. and Lisa Foster*
*Individually, and as next friends of*
*Robert Andrew Terry*

Andrea Chan
achan@olsonllp.com
OLSON & OLSON, L.L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019

*Attorneys for Defendant*
*Harris County, Texas*

By: ___*/s/ Fernando De Leon*___
　　　Fernando De Leon