**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT TERRY JR. and LISA FOSTER INDIVIDUALLY AND AS NEXT FRIENDS OF THEIR DECEASED SON ROBERT ANDREW TERRY, Plaintiffs, | § | Civil Action No. 4:24-CV-3068 (Judge Ellison presiding) |
| v. | § | |
| HARRIS COUNTY, TEXAS, Defendant. | § | |

**Defendant Harris County's Objections to (or Appeal from) Sanctions Order (Dkt. 121)**


LANGDELL ROBINSON PLLC

Jane Langdell Robinson
Of Counsel
11601 Shadow Creek Parkway
Suite 111-375
Pearland, Texas 77584
Telephone: (832) 846-0915

FELDMAN & FELDMAN, P.C.

Cris Feldman
Attorney-in-Charge
cris.feldman@feldman.law
Fernando De Leon
Of Counsel
fernando.deleon@feldman.law
Artur Zigman
Of Counsel
artur.zigman@feldman.law
3355 West Alabama, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472

# Table of Contents


Table of Contents ........ ii

Table of Authorities ........ iv

Nature and Stage of Proceeding........ 1

Facts and Procedural History ........ 1

I. Plaintiffs limited their Requests for Production and Motion to Compel to documents in Harris County's possession, custody, or control. ........ 1

II. Judge Palermo's March 20 and May 1 orders do not address documents outside Harris County's possession, custody, or control. ........ 3

III. The June 24 order *sua sponte* broadened the scope of Plaintiffs' motion and the Court's previous orders by ordering Harris County to produce documents *outside* its possession, custody, or control. ........ 6

IV. Following Plaintiffs' latest status report, Judge Palermo issued the Sanctions Order, imposing unspecified daily sanctions until Harris County produces "the Harris Health and Center Documents." ........ 8

Statement of Issues and Standard of Review ........ 9

Summary of Argument ........ 10

Argument and Authorities........ 11

I. The Subject Documents are not in Harris County's custody, possession, or control. .... 11

A. Plaintiffs have the burden to establish Harris County has possession, custody, or control of the Subject Documents. ........ 11

B. In order for a party to have "control" over documents held by a third party, the party must have the legal right to obtain the documents. ........ 11

C. Harris Health and Harris Center are independent units of local government and Harris County does not control them........ 12

D. The Interlocal Agreement with Harris Health does not give Harris County the ability to command production of the Subject Documents........ 13

E. Plaintiffs' bare assertions that Harris Health and Harris Center "are run by Harris County" are incorrect and insufficient to show control........ 15

II. Harris County did not waive any argument or objection regarding producing documents outside its possession, custody, or control; the June 24 order put such documents on the table for the first time........ 16

A. Documents outside the producing party's possession, custody, or control are always outside the scope of discovery and Plaintiffs did not request them........ 17

B. A motion to compel production of documents does not reach documents that were not requested in the first place........ 17

C. Harris County did not waive its argument because Plaintiffs did not move to compel the Subject Documents and the prospect of requiring Harris County to produce documents outside its possession, custody, or control was raised for the first time by the June 24 order. ....18

III. The Sanctions Order improperly sanctions Harris County for failing to produce the Expanded Subject Documents even though they were not covered in Court's prior orders or in Plaintiffs' motion to compel.... 19

IV. The Sanctions Order fails to limit sanctions to Plaintiffs' reasonable expenses. ........... 20

V. The Sanctions Order improperly imposes coercive sanctions on a party who lacks the ability to comply with the order. .... 20

VI. In non-consent civil cases, magistrate judges must certify contempt other than summary criminal contempt for obstruction of justice. .... 24

VII. Harris County raised these arguments to the Magistrate Judge. .... 24

Conclusion .... 25

Certificate of Service .... 27

**Table of Authorities**

*Alex A. by & through Smith v. Edwards*,
No. 22-573-SDD-RLB, 2025 WL 255453 (M.D. La. Jan. 21, 2025) ..............................15, 16

*Auto Parts Mfg. Mississippi Inc. v. King Constr. of Houston, LLC*,
258 F. Supp. 3d 740 (N.D. Miss. 2017), *aff'd sub nom. Auto Parts Mfg. Mississippi, Inc. v. Kohn Law Group, Inc.*, 725 F. App'x 305 (5th Cir. 2018) ..........................................22

*Becnel v. Salas*,
No. MC 17-17965, 2018 WL 691649 (E.D. La. Feb. 2, 2018)..............................................11

*Castaneda v. Falcon*,
166 F.3d 799 (5th Cir. 1999) ..........................................................................................24

*Crosswhite v. Lexington Ins. Co.*,
321 F. App'x 365 (5th Cir. 2009) ...............................................................................17, 18

*Dorsey v. Academy Moving & Storage, Inc.*,
423 F.2d 858 (5th Cir. 1970) ..........................................................................................22

*Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*,
No. H-12-184, 2018 WL 3649625 (S.D. Tex. May 11, 2018), *report & recommendation adopted*, 2018 WL 3238139 (S.D. Tex. July 3, 2018)..........................................................24

*Duarte v. St. Paul Fire & Marine Ins. Co.*,
No. EP-14-CV-305-KC, 2015 WL 7709433 (W.D. Tex. Sept. 25, 2015)..................12, 17, 22

*Gompers v. Bucks Stove & Range Co.*,
221 U.S. 418 (1911)..........................................................................................................21

*Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*,
348 F.R.D. 54 (E.D. La. 2024)...........................................................................................12

*Heller v. City of Dallas,*
303 F.R.D. 466, 478 (N.D. Tex. 2014) ..............................................................................22

*Hansard v. Zamora*,
No. 4:23-cv-00041-DC-DF (W.D. Tex. Feb. 11, 2026) ..................................................15, 16

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994)..............................................................................................21, 22, 23

*Laje v. R.E. Thomason Gen. Hosp.*,
665 F.2d 724 (5th Cir. 1982) ..........................................................................................13

*Lamar Fin. Corp. v. Adams*,
918 F.2d 564 (5th Cir. 1990) .......................................................................................21, 22

*Matter of Highland Capital Mgmt., L.P.*,
98 F.4th 170 (5th Cir. 2024) .....21, 22

*Rodriguez v. Mental Health Mental Retardation Auth. of Harris Cnty.*,
No. H-08-334, 2008 WL 11502062 (S.D. Tex. Oct. 30, 2008) .....13

*Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*,
No. 4:09-cv-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) .....11, 15, 16

*Southern Filter Media, LLC v. Halter*,
No. 13-116-JJB-RLB, 2014 WL 4278788 (M.D. La. Aug. 29, 2014) .....12

*United States v. United Mine Workers of America*,
330 U.S. 258 (1947) .....22

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) .....11, 12

**Constitutional Provisions**

TEX. CONST. ART. IX, § 4 .....13

**Statutes**

28 U.S.C. § 636 .....1, 24

42 U.S.C. § 1983 .....1

TEX. GOV'T CODE § 791.011 .....13, 14

TEX. HEALTH & SAFETY CODE § 281.0283 .....13

TEX. HEALTH & SAFETY CODE § 281.047 .....13

TEX. HEALTH & SAFETY CODE § 281.056 .....13

TEX. HEALTH & SAFETY CODE § 534.001 .....13

TEX. HEALTH & SAFETY CODE § 534.008 .....13

**Rules**

FED. R. CIV. P. 34 .....2, 10, 17

FED. R. CIV. P. 37 .....17, 18, 19, 20, 22, 23, 24

FED. R. CIV. P. 72 .....1, 10

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendant Harris County files these Objections to Judge Palermo's September 28 Order (Dkt. 121) (the "Sanctions Order"). *See* FED. R. CIV. P. 72(a). In the alternative, to the extent this Court deems the Sanctions Order an order of contempt, Harris County appeals the order to this Court. *See* 28 U.S.C. § 636(e)(7).

The Sanctions Order improperly compels Harris County to produce documents outside its possession, custody, or control even though Plaintiffs' document requests and motion to compel never requested such documents. Moreover, the Sanctions Order imposes sanctions on Harris County for failing to produce documents that were never compelled by any prior order. For these and the other reasons set out below, the Sanctions Order is clearly erroneous and contrary to law.

## Nature and Stage of Proceeding

This is a wrongful death claim[1] brought pursuant to 42 U.S.C. § 1983 alleging that Harris County failed to timely respond to Mr. Terry's medical emergency while he was detained in the Harris County jail, depriving him of his constitutional rights and causing his death. Discovery is closed. *See* Dkt. 24 at 2.[2] Harris County has moved for summary judgment on all Plaintiffs' claims. Dkts. 37, 65.

## Facts and Procedural History

### I. Plaintiffs limited their Requests for Production and Motion to Compel to documents in Harris County's possession, custody, or control.

In their Requests for Production to Harris County, Plaintiffs' definition of documents limited Harris County's production obligation to documents "in your actual possession, custody,

[1] Although Plaintiffs initially asserted both wrongful death and survival claims, Plaintiffs have since abandoned their survival claim. *See* Dkt. 13 at 196; Ex. 1 at 3; Ex. 2 at 3.

[2] For filed documents, page number references are to the CM/ECF page stamp in the upper-right-hand corner of the page.

or control."[3] Dkt 32-1 at 4; *see* FED. R. CIV. P. 34(a)(1). Where requests appeared to implicate documents held by Harris Health or Harris Center, Harris County duly noted in its objections and responses that both are governmental entities "separate from Harris County." Dkt. 32-3 at 4, 5, 12, 15, 20, 22, 24–26, 32, 39, 42, 60–63, 68–71, 74; Dkt. 32-6 at 4–5, 12, 17, 21–22, 24, 27–29, 34, 42, 46, 63–66, 72–75, 80–81, 88–89, 93, 98, 101, 103–05, 111, 119, 123, 141–44, 150, 152–53, 158–59, 166–67, 171, 176, 179, 181–84, 189, 197, 201, 219–22, 228–29, 231–32. Although Harris County first alerted Plaintiffs to this issue in March 2025 (*see* Dkt. 32-3 at 73), Plaintiffs apparently never subpoenaed Harris Health or Harris Center.[4]

On February 16, 2026, Plaintiffs moved to compel a number of documents, an inspection of the jail, and the deposition of Sheriff Gonzalez, among other requests. Dkt. 32. With respect to documents relating to Harris Health and Harris Center, Plaintiffs' motion made conclusory assertions that Harris County controlled the other entities' documents. *See id.* at 5 ("most, if not all, of the relevant evidence is in the exclusive possession of Defendant"); 17 (regarding death reviews, "[e]ach of these documents are within [Defendant's] possession, custody, and control"); 22 ("Defendant has not produced any policies from Harris Health or the Harris Center …. Harris County has this information in their possession, custody or control and should be required to produce it"). Plaintiffs apparently based this conclusion on the incorrect assumptions that (1) Harris Health and Harris Center are departments of Harris County and (2) Harris County operates them, despite Harris County repeatedly telling Plaintiffs otherwise. *See* Dkt. 32-4 at 7 (meet-and-

[3] Plaintiffs also defined documents to include documents "in the possession, custody, or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents." *See* Dkt. 32-1 at 4. However, Plaintiffs have never argued that Harris Health or Harris Center fit within any of these categories.

[4] By contrast, the plaintiffs in *Wagner v. Harris County* subpoenaed Harris Health. *See*, *e.g.*, subpoena attached at Ex. 3.

confer letter asserting "Harris Health is still owned and operated by Harris County and is a department of the County making the information responsive to those requests within Defendant's possession, custody, and control.").

Nowhere in Plaintiffs' motion to compel did Plaintiffs address the legal standard for establishing that a responding party has control over a third party's documents.[5] Nor did Plaintiffs' motion ever suggest that Harris County should be required to produce the requested documents regardless of whether Harris County actually has possession, custody, or control of them. Instead, Plaintiffs addressed Harris Health and Harris Center as if they are part of Harris County.

On February 18, 2026, Judge Palermo ordered Harris County to respond to Plaintiffs' motion by February 20—four days after Plaintiffs filed their motion, and two days after the order. Dkt. 35; *see* Dkt. 32. Two days to respond to a just-filed 20-page motion attaching more than 800 pages of exhibits would be a short deadline. *See* Dkt. 32, 32-1 through 20, 36 at 1 n.2. But this deadline was particularly short for Harris County, who had recently brought on new lead counsel so prior counsel could withdraw and attend to a significant medical issue. Dkt. 29; Dkt. 69; Dkt. 95 at 45:18–24. Harris County responded to the motion on February 20, as ordered. Dkt. 36. Harris County also moved for protection and, in the alternative, for more time, but the Court denied the motion for protection and granted the motion to compel, mooting Harris County's request. Dkt 36 at 2 n.2; Dkt. 53. On March 16, 2026, the discovery period closed. Dkt. 24 at 2.

## II. Judge Palermo's March 20 and May 1 orders do not address documents outside Harris County's possession, custody, or control.

On March 20, 2026, Judge Palermo held a hearing on Plaintiffs' motion to compel. Dkt.

[5] After asserting the documents are within Harris County's "possession, custody, and control," Plaintiffs include a string cite of cases without discussion or even a parenthetical. Dkt. 32 at 17. In no way does this unadorned string cite qualify as addressing a legal standard.

56. Argument at the hearing focused on Plaintiffs' request that the Court compel Harris County to produce all discovery from *Wagner v. Harris County*, 4:23-CV-02886, in this suit. *See id.* at 11–13. Harris Health and Harris Center were not discussed. *See id.*

The same day, Judge Palermo ordered Harris County to produce all *Wagner* discovery and brief the requests to depose Sheriff Gonzalez and videotape the jail inspection. Dkt. 53 at 1–2. Judge Palermo further ordered counsel to submit a joint status report on "any remaining discovery issues." *Id.* at 2. Although the March 20 order states it is granting Plaintiffs' motion to compel, it does not specifically address Harris Health or Harris Center documents.

The parties' subsequent status reports and briefing focused solely on the *Wagner* documents, the requested deposition of Sheriff Gonzalez, and the request to videotape the jail inspection. *See* Dkt. 58 (Harris County's objections to Dkt. 53 and motion to stay); Dkt 59 (Plaintiffs' status report); Dkt 60 (Plaintiffs' response to Harris County's objections); Dkt. 61 (Harris County's brief on Plaintiffs' request to depose Sheriff Gonzalez); Dkt. 62 (Harris County's brief on Plaintiffs' request to video record the jail); and Dkt 63 (Harris County's status report).

On Friday, April 24, 2026, Plaintiffs filed a second status report addressing outstanding discovery "from the First Motion to Compel still to be furnished." Dkt. 77. Again, Plaintiffs did not suggest Harris County should be required to produce documents regardless of whether they were in Harris County's possession, custody, or control. *See id.* at 2. Judge Palermo ordered Harris County to file a response within two business days. Dkt 78 at 1. Harris County did so. Dkt. 79.

On May 1, Judge Palermo again ruled on Plaintiffs' motion to compel. Dkt. 82. With respect to Harris Health and Harris Center, the order requires production of "Harris Health's and Harris Center's policies and procedures relating to jail operations" and Harris Health and Harris

Center's "reviews of deaths, officer conduct, and policies and procedures" (referred to herein as the "Subject Documents"). Dkt. 82 at 5, 11. In her order, Judge Palermo stated that because Harris County's response to Plaintiffs' status report focused on the *Wagner* documents, the requested deposition of Sheriff Gonzalez, and the request to videotape the jail inspection, Harris County "waived any objections to the remaining discovery requests in Plaintiffs' status report" and ordered Harris County to produce those documents. Dkt. 82 at 9–11. But the May 1 order does not state Harris County must produce documents outside its possession, custody, or control. *See id.*

On June 2, 2026, Harris County filed a status letter regarding compliance with the May 1 order. Dkt. 87. Specifically, it reported that Harris County had (1) produced the entire *Wagner* discovery file; (2) agreed on a date to produce Sheriff Gonzalez for deposition; (3) coordinated with Plaintiffs to conduct a video inspection of the jail (which Plaintiffs completed); (4) produced the full personnel files of officers connected to Mr. Terry's incident; (5) produced the Harris Health and Harris Center policies and procedures in Harris County's possession; (6) produced the requested emergency intercom call button data; and (7) produced audit materials related to policies and practices in the Jail as well as statistical data. Dkt. 87 at 1–3.

With respect to Harris Health and Harris Center's documents, including policies, procedures, death reviews and investigations, Harris County reiterated the same information it had lodged in its discovery objections: Harris Health and Harris Center are separate and distinct legal entities from Harris County. *Id.* at 2. Therefore, Harris County could only produce what it had in its possession. *Id.* Harris County noted the *Wagner* discovery file contained death reviews and serious incident reports reported to TCJS from 2018–2024. *Id.* at 2–3. Having produced all documents in its possession, custody, or control responsive to Plaintiffs' motion to compel as reflected in the Court's orders, Harris County believed its production to be complete. *See id.* at 3.

### III. The June 24 order *sua sponte* broadened the scope of Plaintiffs' motion and the Court's previous orders by ordering Harris County to produce documents *outside* its possession, custody, or control.

On June 24, 2026, Plaintiffs responded to Harris County's status update. Dkt. 93. Plaintiffs incorrectly argued that Harris County had "control and access over" the Subject Documents because "Harris Health and the Harris Center are Harris County entities." *Id.* at 1–2. Plaintiffs relied on the 2022 Interlocal Agreement between Harris County and Harris Health as the basis for their argument that Harris County had access and control over Harris Health. *Id.* at 2 (citing Interlocal Agreement attached at Dkt. 93-1). The Interlocal Agreement transitioned the provision of health care services at the Jail from the Sheriff's Office to Harris Health, but did not give Harris County the right to access any Harris Health records other than the medical records created by Harris Health providers. *See* 93-1 at 7, 10.

In its responses to Plaintiffs' discovery requests—made more than a year before—Harris County had objected dozens of times that Harris Health and Harris Center are different legal entities and separate from Harris County. *See* Dkt. 32-3, 32-6. Yet in its June 24 response, Plaintiffs claimed Harris County's June 2 status letter raised this "argument for the first time." Dkt. 93 at 1.[6] Even so, Plaintiffs did not state they expected Harris County to produce documents **outside** its possession, custody, or control, only their belief that Harris County **does** control the requested documents. *See id.*

Plaintiffs' June 24 responsive letter is the first time Plaintiffs addressed the legal standard to determine whether a responding party has "control" over a third party's documents. *See* Dkt.

---

[6] Indeed, Plaintiffs' counsel was present during similar argument before this Court in the *Wagner* matter on April 9, 2025, in which Harris County stated it could not produce Harris Health records other than medical records and suggested the plaintiffs should obtain such documents through third-party discovery. *Wagner v. Harris County*, 4:23-CV-02886, Dkt. 191 at 3, 13–14. As mentioned above, the *Wagner* plaintiffs did issue subpoenas to Harris Health. *See*, *e.g.*, Ex. 3.

93 at 2. But Harris County had no opportunity to respond to this new argument. The same day as Plaintiffs' letter, Judge Palermo issued the June 24 order, stating that "Plaintiff informed the Court that Defendant now asserts—for the first time—that the Court ordered discovery is not under the County's control." Dkt. 94 at 1. Judge Palermo continued, "As found in the May 1 Order, Defendant waived all objections to these discovery requests," and ordered production of documents "as previously ordered." *Id.* The order provided Harris County until June 29—three business days—to comply and stated that if Harris County did not, "the Court will impose daily monetary sanctions until such time that Defendant establishes it has fully complied." *Id.* at 2.

This June 24 order represents the first time the Court (or anyone) stated that Harris County must produce Harris Health and Harris Center documents regardless of whether it had possession, custody, or control of them. *See id.* The order accepted Plaintiffs' misstatement that Harris County had just raised the control issue "for the first time," contrary to the objections made by Harris County. The reference to control being raised "for the first time" confirms that the May 1 order did **not** address whether Harris County controlled the requested documents. *See id.*

Although the June 24 order provided Harris County only three business days to respond, Harris County filed its objections along with its production of the remaining responsive document in its possession (the Harris Health Policy and Regulations Manual) by that date. Dkt 97; *see id.* at 8. In its objections, Harris County addressed why the Interlocal Agreement does not give Harris County control over Harris Health or Harris Center documents, responded to Plaintiffs' newly raised argument regarding the legal standard for control over third-party documents, disputed it had waived (or could waive) an objection regarding documents outside of its possession, custody, or control, and noted such documents were not covered either by Plaintiffs' requests for production, their motion to compel, or the Court's May 1 order. *Id.* at 3, 10–16. Harris County

also argued that coercive sanctions should not be imposed on a party who lacks the power to comply with the order and objected that the order did not consider Harris County's capacity to comply. *Id.* at 16–22.

The Court overruled Harris County's objections, noting that a "party is not permitted to raise, on appeal to the district judge, what it failed to address to the magistrate judge." Dkt. 99 at 1. Importantly, the Court did not address that Judge Palermo issued the June 24 order the same day that Plaintiffs filed their responsive letter or that the June 24 order *sua sponte* expanded the scope of production and threatened coercive daily sanctions. Having had no previous opportunity to address these issues, Harris County had no choice but to raise them in its objections.

Plaintiffs have been aware since March 2025 that the records were held by third parties and could have issued third-party discovery. Instead, Harris County issued Texas Public Information Act requests to both Harris Health and Harris Center to attempt to obtain responsive documents held by those entities. *See* Dkt. 117 at 2. On September 16, 2026, Harris Health provided a production to Harris County consisting entirely of documents Harris County had already produced to Plaintiffs, with the exception of a single policy entitled Legal Medical Record, which Harris County produced. *See id.* Harris Health sought further guidance from the Texas Attorney General's office with regard to the additional documents that were the subject of the TPIA request. Dkt. 117-1. Harris Center has not yet provided any documents to Harris County. *Id.* at 2.

### IV. Following Plaintiffs' latest status report, Judge Palermo issued the Sanctions Order, imposing unspecified daily sanctions until Harris County produces "the Harris Health and Center Documents."

Since the June 24 order, Harris County has attempted to confer with Plaintiffs to request more specific information about documents they seek and believe Harris County has not produced, but Plaintiffs have not provided such information. Dkt. 117 at 1. Nonetheless, on September 14,

2026, Plaintiffs filed an "Updated Status Report on Discovery" in which Plaintiffs claimed Harris County "continues to refuse to produce the documents, investigations, death reviews, committee notes, audits, communications, and reviews by Harris Health and Harris Center relating to detainees and their work in the Harris County Jail." Dkt. 116. In its response, Harris County reiterated that it had produced all responsive documents in its possession, custody, or control and described its additional efforts to obtain Harris Health and Harris Center documents through the TPIA. Dkt. 117.

On September 28, 2026, Judge Palermo issued the current Sanctions Order. Dkt. 121. The May 1 and June 24 orders had required production of Harris Health's and Harris Center's "policies or procedures relating to jail operations" and "death reviews and investigations into the conduct of its officers and its policies and practices." *See* Dkt. 94 at 1–2. But in defining the "Harris Health and Harris Center documents," the Sanctions Order adopts language from Plaintiffs' September 14 letter: "documents, investigations, death reviews, committee notes, audits, communications, and reviews Harris Health and Harris Center conducted relating to detainees and their work in the Harris County Jail." Dkt. 121 at 1; *see* Dkt. 116 at 1.

This new definition of "Harris Health and Harris Center documents" significantly expands the Subject Documents addressed in the Court's May 1 and June 24 orders. (The new documents encompassed by this description are referred to herein as the "Expanded Subject Documents.") The order also invites Plaintiffs to set the sanctions amount by "inform[ing] the Court what reasonable daily sanction will sufficiently compensate them for the unnecessary expense of pursuing this discovery and deter future gamesmanship." *Id.* at 4–5.

**Statement of Issues and Standard of Review**

The central issue presented is whether Harris County is subject to coercive sanctions to

produce documents that Plaintiffs neither requested through discovery nor moved to compel and that are not in Harris County's possession, custody, or control.

Rule 72(a) provides that a "party may serve and file objections" to a magistrate judge's non-dispositive pretrial order "within 14 days after being served with a copy." FED. R. CIV. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

**Summary of Argument**

Plaintiffs have failed to meet their burden of establishing the Subject Documents are within Harris County's control. Harris Health and Harris Center are independent units of local government that are governed by their own boards. Harris County's Interlocal Agreement with Harris Health does not give Harris County control over the Subject Documents.

A major premise of the Sanctions Order is that Harris County waived an objection to producing documents outside of its possession, custody, or control, and therefore Harris County must produce them. But Rule 34 does not include such documents in the scope of discovery and any such objection is neither required nor waivable. Likewise, Plaintiffs did not request such documents in the underlying document requests or in their motion to compel, even though Harris County explicitly stated in its responses that Harris Health and Harris Center are separate from Harris County. Indeed, the idea that Harris County should be compelled to produce documents outside its possession, custody, or control was first introduced in the Court's June 24 order. Therefore, contrary to the assertion in the Sanctions Order, Harris County did not waive this point.

The Sanctions Order is also contrary to law because it expands the categories of documents covered by the previous orders, is not limited to Plaintiffs' reasonable costs, is both coercive and punitive, and imposes coercive sanctions on a party who lacks the power to comply with the order.

Finally, to the extent the Sanctions Order functions as a civil or criminal contempt order, it does not meet the standards for either.

**Argument and Authorities**

## I. The Subject Documents[7] are not in Harris County's custody, possession, or control.

### A. Plaintiffs have the burden to establish Harris County has possession, custody, or control of the Subject Documents.

"The party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-cv-3778, 2011 WL 3418396 at *2 (S.D. Tex. Aug. 3, 2011). As the party seeking production, Plaintiffs bear this burden. *See id.* Yet despite having known since Harris County's first discovery responses that Harris Health and Harris Center are third parties, Plaintiffs did not address the legal "control" standard until more than four months after they filed their motion to compel. Dkt. 32; Dkt. 93.

### B. In order for a party to have "control" over documents held by a third party, the party must have the legal right to obtain the documents.

A "party cannot be required to permit inspection of documents or things that it does not have." *Becnel v. Salas*, Misc. No. MC 17-17965, 2018 WL 691649 at *3 (E.D. La. Feb. 2, 2018) (citation omitted). Documents "are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit." *Shell Global Solutions*, 2011 WL 3418396 at *2.

"Access" is not enough. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004). In *Wiwa*, the requesting party subpoenaed all documents to which the respondent had

[7] All arguments relating to the Subject Documents apply equally to the Expanded Subject Documents.

"access." *Id.* The Fifth Circuit agreed with the respondent that the term "access" "encompasses documents [the respondent] does not have under his 'possession, custody, or control,'" even if "he could conceivably have access" to them by virtue of his prior employment. *Id.*

"Typically, what must be shown to establish control over documents in the possession of a non-party is that there is a relationship, either because of some affiliation, employment or statute, such that **a party is able to command release** of certain documents by the non-party person or entity in actual possession." *Duarte v. St. Paul Fire and Marine Ins. Co.*, No. EP-14-CV-305-KC, 2015 WL 7709433 at *5 (W.D. Tex. Sep. 25, 2015) (quoting *Southern Filter Media, LLC v. Halter*, Civ. A. No. 13-116-JJB-RLB, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014)) (emphasis added).

"Factors to consider in determining whether a party has 'control' of materials include whether the party could secure the materials from the non-party to meet its own business needs or whether, by virtue of stock ownership or otherwise, the party effectively controls the other entity, specifically considering commonality of ownership, exchange or intermingling of directors, officers or employees of the two corporations, exchange of documents between the corporations in the ordinary course of business, any benefit or involvement of the nonparty corporation in the transaction, and involvement of the non-party corporation in the litigation." *Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 68 (E.D. La. 2024).

### C. Harris Health and Harris Center are independent units of local government and Harris County does not control them.

Plaintiffs assert that "Harris Health and the Harris Center are Harris County entities" and that "[e]ach of these entities are run by Harris County." Dkt. 93 at 2; Dkt. 77 at 3. Plaintiffs are factually and legally incorrect. Harris County does not own, operate, or control either Harris Health or Harris Center.

The Harris County Hospital District, d/b/a Harris Health System, is a political subdivision of the State of Texas created pursuant to Chapter 281 of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE § 281.0283; TEX. CONST. ART. IX, § 4 (allowing the legislature to authorize creation of county-wide hospital districts in large counties); Dkt. 93-1 at 4. Hospital districts (such as Harris Health) are managed by their boards, which have authority to sue or be sued. TEX. HEALTH & SAFETY CODE §§ 281.047, 281.056; *see Laje v. R. E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982) (hospital district board "enjoys virtually unlimited autonomy and control over hospital affairs") (applying predecessor statute).

Harris Center is a community center established pursuant to Section 534.001 of the Health and Safety Code, which provides that such community centers are an agency of the state as well as a unit of local government. TEX. HEALTH & SAFETY CODE § 534.001(c); *see also Rodriguez v. Mental Health Mental Retardation Authority of Harris County*, No. H-08-334, 2008 WL 11502062 at *2–3 (S.D. Tex. Oct. 30, 2008) (community center created by Harris County Commissioners Court was "an agency of the state" and entitled to sovereign immunity). Community centers (such as Harris Center) are administered by their boards of trustees. TEX. HEALTH & SAFETY CODE § 534.008(a).

### D. The Interlocal Agreement with Harris Health does not give Harris County the ability to command production of the Subject Documents.

In support of their argument that Harris County has control of the Subject Documents, Plaintiffs rely on the Interlocal Agreement with Harris Health. Dkt. 93 at 2; Dkt. 93-1. The Sanctions Order also relies on the Interlocal Agreement. Dkt. 121 at 3.

The Texas Government Code permits local governments to contract with other local governments through interlocal agreements. TEX. GOVT. CODE § 791.011(a). By their very nature, interlocal agreements—like the Interlocal Agreement between Harris County and Harris Health—

are contracts between **different** entities. *See id.* And the Interlocal Agreement can provide no support for the idea that Harris County controls Harris **Center's** documents. Harris Center is not even a party to that agreement. Yet Plaintiffs and the Sanctions Order ignore that distinction.

Both Plaintiffs and the Sanctions Order point to provisions addressing the custodianship of patient **medical records** as evidence that Harris County has control over Harris Health's records. Dkt. 93 at 2; Dkt. 121 at 3. The Interlocal Agreement expressly states that Harris County has access to the medical records created by Harris Health and these records have been produced.[8] But any Harris Health documentation of reviews of deaths and officer conduct—*i.e.*, the original Subject Documents—are not patient medical records and Harris County does not have access to them. *See* Dkt. 93-1 at 7, 10.

The provisions relating to reviews of detainee deaths and medical complaints likewise do not give Harris County control over Harris Health documents. While the Sheriff has the right to request Harris Health to review detainee medical complaints or deaths, the Agreement does not require such reviews to be provided or documented in writing, nor does it give the Sheriff the right to demand the underlying records of any such review. *See* 93-1 at 9.

If anything, the Interlocal Agreement underscores the separateness of Harris County and

[8] Note that Plaintiffs attached and relied on the 2022 Interlocal Agreement. However, the 2022 Agreement has been superseded by a 2025 Interlocal Agreement (attached at Ex. 4) which was also produced to Plaintiffs (as part of the *Wagner* file). *See* Dkt. 87 at 2. Per the 2025 Interlocal Agreement, the Harris County Sheriff's office is transferring ownership of all existing and future medical records to Harris Health. Ex. 4 at 6–7, § 2.C. The Agreement also recognizes that even as custodian, Harris Health will only facilitate access to medical records consistent with applicable privacy laws. *Id.* With respect to reviews after custodial deaths, the Agreement notes that the "review conducted by Harris Health's medical committee shall be confidential to the extent allowed by law" and does not state that Harris County shall have access to any documentation. *Id.* at 12–13, § 2.G.4. In fact, the records of medical committees are confidential by law and are not even subject to subpoena. TEX. HEALTH & SAFETY CODE § 161.032. The "joint operating committee" referred to in the Sanctions Order no longer exists. *See* Ex. 4 at 12–13, § 2.G.

Harris Health. The recitals note that Harris Health is "a political subdivision of the State of Texas." The Agreement acknowledges that Harris Health is an independent contractor and the Agreement is not "intended to nor shall it be construed to create an agency relationship, an employer/employee relationship, or a joint venture relationship among the parties." Dkt. 93-1 at 20. Moreover, different signatories signed for each entity. *Id.* at 21.

### E. Plaintiffs' bare assertions that Harris Health and Harris Center "are run by Harris County" are incorrect and insufficient to show control.

Other than the Interlocal Agreement, Plaintiffs have asserted the following bases for asserting Harris County has control over Harris Health and Harris Center documents:

- Harris Health and Harris Center "are run by Harris County" (Dkt. 77 at 3);
- Harris Health and Harris Center "work within the Jail under the supervision and contract of Harris County" (Dkt. 32 at 22); and
- In the *Wagner* case, Harris Health's CEO signed an affidavit to authenticate Harris Health's policies pertaining to the Jail (Dkt. 116 at 1–2).

As discussed above, the assertion that Harris County "runs" Harris Health and Harris Center is legally and factually incorrect. Plaintiffs do not explain how the facts that Harris Health and Harris Center contract with Harris County or that Harris Health provided a custodian of records affidavit for a single document in another case show Harris County has "control" over Harris Health or Harris Center documents. Plaintiffs have offered no evidence at all about Harris Center.

*Shell Global Solutions v. RMS Engineering*, *Alex A. by and through Smith v. Edwards*, and *Hansard v. Zamora*, on which Plaintiffs rely, are not on point. Dkt. 32 at 17; Dkt. 93 at 2. *Shell Global Solutions* addresses the nuanced inquiry applicable when one corporate entity is asked to produce documents belonging to an affiliated corporation. *Shell Global Solutions*, 2011 WL 3418396 at *2–6. In that case, the requesting party did **not** meet its burden to establish the

respondent had "the 'practical ability' to obtain" the requested documents from its affiliates, demonstrating that a finding of control—even between corporate affiliates—is far from automatic. *See id. at *6.*

In *Edwards*, the responding party had the contractual right to access the records at issue. *Alex A. by and through Smith v. Edwards*, No. 22-573-SDD-RLB, 2025 WL 255453 at *9 (M.D. La. Jan. 21, 2025). By contrast, the Interlocal Agreement does **not** give Harris County the right to access the Subject Documents, as discussed above. And in *Hansard v. Zamora*, the responding parties were current and former members of the third-party school district's board. *Hansard v. Zamora*, No. 4:23-cv-00041-DC-DF at 15 (W.D. Tex. Feb. 11, 2026). No such facts are present here.

The Sanctions Order states that by insisting Harris Health and Harris Center are separate governmental entities that Harris County does not control—which is true—Harris County "has abused the discovery process, wasted enormous time and expense," "deliberately ignored and violated several court orders," engaged in a "shell game" and "gamesmanship," and "feign[ed] ignorance and [tried] to hide behind the Matryoshka-doll design of local government bureaucracy." *Id.* at 4–5. But the assumptions underlying this—that Harris County has been dishonest and wasted Plaintiffs' time—are wrong. Plaintiffs could have addressed this issue more than a year ago by issuing subpoenas to Harris Health and Harris Center, but they failed to do so.

## II. Harris County did not waive any argument or objection regarding producing documents outside its possession, custody, or control; the June 24 order put such documents on the table for the first time.

Neither Plaintiffs' requests for production, Plaintiffs' motion to compel, nor even Plaintiffs' status reports before June 24 purported to request documents outside Harris County's possession, custody, or control. At most, Plaintiffs stated they believed Harris County had

possession, custody, or control over Harris Health and Harris Center documents.

By stating Harris County must produce documents outside its possession, custody, or control because it "waived all objections to these discovery requests," the June 24 order for the first time expanded the scope of Plaintiffs' document requests and motion to compel to include documents **outside** Harris County's possession, custody, or control. *See* Dkt. 94. Harris County timely objected. Dkt. 97.

**A. Documents outside the producing party's possession, custody, or control are always outside the scope of discovery and Plaintiffs did not request them.**

Rule 34 provides that a party may serve requests to produce documents "in the responding party's possession, custody, or control." FED. R. CIV. P. 34(a)(1)(A). The requirement that documents be in the responding party's possession, custody, or control is a limitation on the scope of discovery as stated in Rule 34. *See id.*; *Duarte*, 2015 WL 7709433 at *5 ("The Court [rejects the] argument that possession, custody, or control is an objection that can be waived because the practical effect of that ruling would result in a party being compelled to produce that which they cannot, ultimately resulting in a continued violation of a court order for failing to comply.").

Consistent with Rule 34's strictures, Plaintiffs' requests for production of documents explicitly limited the scope of Plaintiffs' requests to documents in Harris County's "possession, custody, or control." Dkt. 32-1 at 1, 4.

**B. A motion to compel production of documents does not reach documents that were not requested in the first place.**

Rule 37 provides that a party may move for an order compelling production when a party fails to produce documents "as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B)(iv). Therefore, requesting parties cannot properly move to compel documents that were neither requested nor within the scope of Rule 34. *See Crosswhite v. Lexington Ins. Co.*, 321 Fed. App'x

365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received."); FED. R. CIV. P. 37(a)(3)(B)(iv). By the same logic, an order granting a motion to compel cannot properly compel the responding party to produce such documents.

For this additional reason, neither Plaintiffs' motion to compel nor the Court's order compelling production could or should extend beyond documents within Harris County's control, regardless of whether Harris County explicitly objected on that ground or not.

### C. Harris County did not waive its argument because Plaintiffs did not move to compel the Subject Documents and the prospect of requiring Harris County to produce documents outside its possession, custody, or control was raised for the first time by the June 24 order.

As discussed above, the June 24 order *sua sponte* ordered Harris County to produce documents outside of its possession, custody, or control. Dkt. 94 at 1. Until then, Plaintiffs limited their discovery requests, motion to compel, and status reports to documents Plaintiffs believed Harris County had within its possession, custody, or control. Dkt. 32 at 5–7, 17, 22; 32-1 at 4; Dkt. 77 at 2; Dkt. 93 at 1–2. Moreover, by asserting (although incorrectly) that Harris County was raising the lack-of-control issue "for the first time," the June 24 order implicitly acknowledged and confirmed that the May 1 order did **not** address whether Harris County must produce documents outside its control. *See* Dkt. 94 at 1.

Because (1) documents outside the responding party's possession, custody, or control are outside the scope of Rule 34; (2) Plaintiffs' discovery did not request documents outside Harris County's possession, custody, or control; (3) in its discovery responses, Harris County consistently objected to producing Harris Health or Harris Center documents because they were outside of Harris County's possession, custody, or control; (4) Plaintiffs did not move to compel documents outside Harris County's possession, custody, or control; (5) no one raised the prospect of Harris

County being compelled to produce documents outside its possession, custody, or control until the Court's June 24 order; and (6) Harris County promptly filed objections to the June 24 order on the ground that it improperly ordered Harris County to produce documents outside its possession, custody, or control, Harris County has **not** waived its argument.

## III. The Sanctions Order improperly sanctions Harris County for failing to produce the Expanded Subject Documents even though they were not covered in Court's prior orders or in Plaintiffs' motion to compel.

Plaintiffs' motion to compel only references Harris Health and Harris Center documents twice: where it requests "Death Reviews and Investigations Conducted by Harris County," and where it requests "Policies and Procedures Pertaining to Jail Operations." Dkt. 32 at 17, 22. Along those lines, the May 1 and June 24 order refer to "policies or procedures relating to jail operations" and "death reviews and investigations into the conduct of its officers and its policies and practices." *See* Dkt. 82 at 5; Dkt. 94 at 1–2.

By contrast, the Sanctions Order states that on "May 1, the Court ordered Harris County to produce documents, investigations, death reviews, committee notes, audits, communications, and reviews Harris Health and Harris Center conducted relating to detainees and their work in the Harris County Jail (the 'Harris Health and Center Documents')"—*i.e.*, the Expanded Subject Documents—sweeping new categories under the "Harris Health and Center" umbrella. Dkt. 121 at 1 (citing Dkt. 82 at 9–10). The May 1 order does not make any such statement and does not use the words "investigations," "committee notes," or "communications" at all. *See* Dkt. 82.

Rule 37(a) allows the award of "reasonable expenses incurred in making the motion." FED. R. CIV. P. 37(a). Even if the Sanctions Order tied the sanctions to Plaintiffs' reasonable expenses, it would not be appropriate to award expenses for a motion that does not request the documents compelled. And sanctions under Rule 37(b) are conditioned upon failure to comply with a court

order, but no previous order compelled production of the Expanded Subject Documents. FED. R. CIV. P. 37(b). The Sanctions Order's award of sanctions against Harris County for failing to produce the Expanded Subject Documents—documents Plaintiffs did not request in their motion and that no order previously addressed—is clearly erroneous and contrary to law.

**IV. The Sanctions Order fails to limit sanctions to Plaintiffs' reasonable expenses.**

Rule 37(b) specifies the available sanctions if a party fails to comply with a court order regarding discovery. *See* FED. R. CIV. P. 37(b). Monetary sanctions include (1) payment of the moving party's reasonable expenses, or (2) treating the failure to obey the court order as contempt of court. FED. R. CIV. P. 37(b)(2)(A)(vii), (C).

Here, the Sanctions Order states Harris County is incurring unspecified monetary sanctions for every day since June 29, 2026 "until the day it completes document production." Dkt. 121 at 4. At that time, "Plaintiffs may inform the Court what reasonable daily sanction amount will sufficiently compensate them for the unnecessary expense of pursuing this discovery and deter future gamesmanship." *Id.* at 4–5. But since Harris County does not even know if responsive documents exist, it has no means of proving when it has "complete[d] document production."

The order's invitation for Plaintiffs to set the sanctions in an amount that will "sufficiently compensate them for … unnecessary expense … and deter future gamesmanship" does not limit or tie the sanctions amount to Plaintiffs' **reasonable expenses**, as required by Rule 37(b)(2)(C). Moreover, the mechanism of a daily sanction is incompatible with a measurement of fixed past expenses. To the extent the order is intended as an order of contempt, it does not meet the requirements for such orders, as discussed in more detail below.

**V. The Sanctions Order improperly imposes coercive sanctions on a party who lacks the ability to comply with the order.**

Although Harris County lacks the ability to comply with the Sanctions Order, the order

expressly conditions sanctions on Harris County's future compliance: "Harris County incurs monetary sanctions for every day since June 29, 2026 … until the day it completes document production." Dkt. 121 at 4. Moreover, the Sanctions Order does not limit or tie the sanctions award to Plaintiffs' reasonable expenses. Therefore, the Sanctions Order functions more like a coercive civil contempt order than an order under Rule 37. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828–29 (1994) (while the "paradigmatic coercive, civil contempt sanction … involves confining a contemnor indefinitely until he complies with an affirmative command," a "per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" is a "close analogy to coercive imprisonment").

The civil contempt power is limited because it "uniquely is 'liable to abuse.' Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct.'" *Bagwell*, 512 U.S. at 831 (citation and internal quotation marks omitted); *Matter of Highland Capital Mgmt., L.P.*, 98 F.4th 170, 174 (5th Cir. 2024).

Therefore, civil contempt sanctions must be remedial and "may not have the 'primary purpose' of 'punishing the contemnor or vindicating the authority of the court.'" *Id.* (quoting *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)) (brackets omitted); *see also Bagwell*, 512 U.S. at 827–28 (traditionally, "a contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant [and criminal if] the sentence is punitive, to vindicate the authority of the court'") (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)); *compare* Dkt. 121 at 4 ("The time has come for the Court to … vindicate the integrity of the judicial process.").

Before issuing coercive sanctions, the court must consider whether the sanctions will be effective in bringing about the desired result. *Lamar Fin. Corp.*, 918 F.2d at 567 (when imposing a civil contempt sanction, the record must reflect that the court considered factors including "the probable effectiveness of the sanction"); *Auto Parts Mfg. Mississippi Inc. v. King Constr. of Houston, LLC*, 258 F. Supp. 3d 740, 751 (N.D. Miss. 2017), *aff'd sub nom. Auto Parts Mfg. Mississippi, Inc. v. Kohn Law Group, Inc.*, 725 Fed. App'x 305 (5th Cir. 2018) (court must consider "'the probable effectiveness of [the] suggested sanction in bringing about the result desired'") (alteration in original) (quoting *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). This safeguard ensures such sanctions are appropriately remedial rather than punitive. *See Highland Capital*, 98 F.4th at 174–75.

Moreover, because coercive sanctions should be designed to effectively bring about compliance, they are not appropriate when the contemnor lacks the power to comply. *See Auto Parts*, 258 F. Supp. 3d at 751 ("Coercive sanctions are 'avoidable through obedience.'") (quoting *Bagwell*, 512 U.S. at 827); *Heller v. City of Dallas*, 303 F.R.D. 466, 478 (N.D. Tex. 2014) ("Sanctions available under Rule 37(b) are appropriate where there is willful disobedience or gross indifference but not where failure to comply was outside the party's control.") (citing *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970)).

For this reason, it is improper to issue coercive sanctions against a party for failing to produce documents that are not in the party's possession, custody, or control. *Duarte*, 2015 WL 7709433 at *5 ("The Court [rejects the] argument that possession, custody, or control is an objection that can be waived because the practical effect of that ruling would result in a party being compelled to produce that which they cannot, ultimately resulting in a continued violation of a court order for failing to comply.").

Here, in response to Harris County's objection that it is not capable of complying with the order compelling production because it does not control the requested documents, the Sanctions Order merely states that Harris County "waived that argument." Dkt. 121 at 1. This reasoning, however, does not address whether Harris County is capable of compliance and therefore able to avoid sanctions.

Although coercive civil sanctions orders must consider the sanctioned party's ability to comply, the Sanctions Order does not address this issue. As a result, the Sanctions Order is reasonably calculated **not** to bring about compliance, but only to punish Harris County for past conduct. *See* Dkt. 121 at 4–5 (stating the "time has come for the Court to … vindicate the integrity of the judicial process" and inviting Plaintiffs to set a daily sanction amount sufficient to "deter future gamesmanship"). This is not a permissible basis for a coercive civil sanction.

By using past actions to justify sanctions that Harris County is unable to avoid through future compliance, the Sanctions Order more closely resembles punitive criminal sanctions than coercive civil sanctions. *See Bagwell*, 512 U.S. at 829 (noting that "a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance") (citation omitted).

Criminal sanctions, however, generally require enhanced Constitutional protections beyond an ordinary civil proceeding upon notice and an opportunity to be heard. *Bagwell*, 512 U.S. at 826–27, 831–34 (at 833, contrasting criminal contempt with civil contempt remedies available pursuant to Rule 37). Compounding this error is the fact that the Sanctions Order imposes indefinite daily sanctions of an unspecified amount—sanctions that Harris County will be powerless to stop.

**VI. In non-consent civil cases, magistrate judges must certify contempt other than summary criminal contempt for obstruction of justice.**

To the extent the Sanctions Order is properly deemed an order of contempt, Harris County appeals that order to this Court.

Magistrate judges exercise limited contempt authority in non-consent cases. *See* 28 U.S.C. § 636. Pursuant to Section 636, in civil non-consent cases a magistrate judge may only order summary criminal contempt for acts "constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice." 28 U.S.C. § 636(e), (e)(2). Otherwise, magistrate judges must certify contempt to the district court. 28 U.S.C. § 636(e)(6)(B).

Rule 37(b)(2)(A)(vii) allows courts to treat the failure to obey discovery orders as contempt of court. FED. R. CIV. P. 37(b)(2)(A)(vii). However, Rule 37 does not appear to expand the authority of magistrate judges to enter contempt orders, even for discovery matters. *See Castaneda v. Falcon*, 166 F.3d 799, 801 and n.4 (5th Cir. 1999) (the "prevailing view is that a magistrate judge lacks the power to adjudicate contempt proceedings; pursuant to 28 U.S.C. § 636(e), a magistrate may only certify to the district court (or deny certification of) facts possibly constituting contempt") (collecting cases); *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, No. H-12-184, 2018 WL 3649625 at *3 (S.D. Tex. May 11, 2018) (recommending sanctions pursuant to Rule 37(b)), *report and recommendation adopted*, 2018 WL 3238139 (S.D. Tex. July 3, 2018); *compare* 28 U.S.C. § 636(e)(4) (In civil consent cases, "the magistrate judge may exercise the civil contempt authority of the district court. This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under [the Federal Rules of Civil Procedure].").

**VII. Harris County raised these arguments to the Magistrate Judge.**

By order of the magistrate judge, the parties' filings on this matter have consisted primarily of informal "status report" letters, with the Court often permitting Harris County only two or three

business days to respond. *See* Dkt. 77 (Plaintiffs' status report); Dkt. 78 (ordering Harris County to respond in two business days); Dkt. 93 (Plaintiffs' response to status report); Dkt. 94 (order requiring production within three business days); *see also* Dkt. 35 (ordering Harris County to respond to Plaintiffs' motion to compel in two business days). This format is not conducive to an orderly presentation of arguments, supporting facts, and legal authorities.

Regardless, other than issues created for the first time in the Sanctions Order, Harris County raised these arguments to the Magistrate Judge. Specifically, in response to Plaintiffs' September 14, 2026 status letter complaining Harris County "continues to refuse to produce" documents the Court ordered it to produce, Harris County states it has produced all responsive documents in its possession, custody, or control; it does not have possession, custody, or control of the Subject Documents because Harris Health and Harris Center are separate legal entities that Harris County does not control; Harris County did not waive its argument or objection on this ground because Rule 34 does not authorize discovery of, and Plaintiffs' discovery did not seek, documents outside Harris County's possession, custody, or control; Harris County has attempted to confer with Plaintiffs regarding which documents Plaintiffs seek and believe Harris County has not produced, but Plaintiffs have not provided that information; and Harris County has nonetheless sought to obtain the documents through TPIA requests. Dkt. 117 at 1–2. These points fully responded to those raised in Plaintiffs' September 14 letter. Beyond the points Plaintiffs raised in their immediate letter, Harris County has set out its legal arguments before, as outlined above.

**Conclusion**

For the reasons stated herein, the Sanctions Order is clearly erroneous and contrary to law. Harris County respectfully requests this Court to sustain its objections and vacate the Sanctions Order.

Respectfully submitted,

FELDMAN & FELDMAN, P.C.

By: <u>*/s/ Cris Feldman*</u>

Cris Feldman
Attorney-in-Charge
Texas Bar No. 24012613
S.D. Texas Bar No. 712459
cris.feldman@feldman.law
Fernando De Leon
Of Counsel
Texas Bar No. 24025325
S.D. Texas Bar No. 32395
fernando.deleon@feldman.law
Artur Zigman
Of Counsel
Texas Bar No. 24150099
S.D. Texas Bar No. 3944653
3355 West Alabama, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472

Jane Langdell Robinson
Of Counsel
LANGDELL ROBINSON PLLC
Texas Bar No. 24062970
S.D. Texas Bar No. 1063725
jane@langdellrobinson.com
11601 Shadow Creek Parkway
Suite 111-375
Pearland, Texas 77584
Telephone: (832) 846-0915

*Attorneys for Defendant*
*Harris County, Texas*

***[remainder of page intentionally left blank]***

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing document has been served on the following parties and/or counsel of record by filing it with the Court's electronic-filing system on October 12, 2026:

Paul A. Grinke
paul@bencrump.com
Aaron Dekle
BEN CRUMP LAW, PLLC
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034

*Attorneys for Plaintiffs*

Shelby J. White
swhite@dpslawgroup.com
Thad D. Spalding
tspalding@dpslawgroup.com
Kathryn Womble
kwomble@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222

*Attorneys for Plaintiffs*

Carl L. Evans, Jr.
cevans@mccathernlaw.com
Alizabeth A. Guillot
aguillot@mccathernlaw.com
Jordan A. Carter
jcarter@mccathernlaw.com
MCCATHERN, PLLC
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219

*Attorneys for Plaintiffs*

By: */s/ Fernando De Leon*
Fernando De Leon